## NORDAAS *v.* HUBBARD *et al.*[1]

*(District Court, S. D. Alabama. December 12, 1891.)*

1. SHIPPING—PLACE OF LOADING—CHARTER-PARTY.
   A charter-party providing that the vessel shall load at Mobile a cargo not exceeding what she can reasonably carry does not compel the shipper, after he has loaded her to the draught of the river at the city, to furnish her more at the deeper anchorage in the bay of Mobile, 30 miles from the city.
2. SAME—DUTIES OF MASTER.
   It is the peculiar business and duty of the ship-master to know what ports his vessel can enter and what anchorages are safe.
3. SAME—COST OF LIGHTERAGE.
   If a vessel, in order to earn greater freight, gets the shipper to furnish at a deeper anchorage cargo in addition to what he had furnished at the agreed place of loading, the cost of lightering must be borne by the vessel. Delivery to the lighter is delivery to the vessel.
4. CUSTOM—EVIDENCE OF USAGE.
   While evidence of usage is inadmissible to contradict, it is admissible to explain, a contract where otherwise the intention of the parties cannot be ascertained.
5. SAME—APPLICATION TO CHARTER.
   When a custom is certain and general, although not so notorious or so acquiesced in as to have the force of law, it will be carried out as to a point where the contract is silent, when the charter-party provides that the custom of the port is to be observed in all cases not especially expressed.

In Admiralty. Libel *in personam* by owner of vessel for extra expenses of finishing loading his vessel in the lower bay of Mobile, 30 miles from the city of Mobile. The facts are stated in the opinion.

*G. L. & H. T. Smith*, for libelant.

*Pillans, Torrey & Hanaw*, for respondents.

TOULMIN, J. The charter-party out of which this suit has arisen, and upon the construction of which the rights of the parties thereto are to be determined, in substance provides:

"That the vessel chartered shall proceed to Mobile, and there load from the charterers, at such anchorage or dock as they may direct, (where the vessel can be afloat, \* \* \*) a full and complete cargo, to consist of sawn pitch pine deals under and upon deck, not exceeding what she can reasonably stow or carry, \* \* \* which cargo the charterers agree to ship, and, being so loaded, shall proceed to Rio de Janeiro, \* \* \* at the rate of $15 per one thousand superficial feet," etc.

It seems to me clear from the terms of the contract that it was the intention of the parties that the vessel was to load at Mobile, and not partly at Mobile and partly in the lower bay, as she did do, owing to her heavy draught, and especially in view of the principle that it is the peculiar business and duty of the ship-master to know what ports his vessel can enter and what anchorages are safe. *The Gazelle*, 11 Fed. Rep. 431. Under the terms of the charter-party, the ship was not bound to load a part of her cargo at Mobile, and then take on board, outside the bar of Mobile, a part of the cargo she could not safely load at Mobile and cross the bar with. She could have loaded such a cargo as she could

[1] Reported by Peter J. Hamilton, Esq., of the Mobile bar.

cross the bar with, and no more, without being compelled to complete her loading outside the bar. She had the option to load a part at Mobile, and to complete the cargo outside the bar; but by the terms of the contract she was not bound to do so. Scrut. Char. Part. 72, 75. If, in order to earn more freight, she desired to complete or take on more cargo outside the bar, and required the charterers to furnish her such additional cargo, I think the vessel was chargeable with the difference in the expense of delivery at Mobile and in the bay outside the bar. A delivery to the lighter at Mobile was a delivery to the vessel. *Bulkley* v. *Cotton Co.*, 24 How. 386. But, if I am in error in thus construing the contract, and it is necessary to consider any custom of the port in reference to the loading of vessels of like draught with the vessel in question, in order to ascertain what the intention of the parties was, let us see what the evidence shows upon the subject. Evidence of usage is not admissible to contradict a contract, but is admissible to explain a contract, where otherwise the intention of the parties cannot be ascertained. *Robinson* v. *U. S.*, 13 Wall. 363. Besides, there is a provision in the charter-party that the custom of the port is to be observed in all cases where not especially expressed. The evidence shows that there is a custom at the port of Mobile for a vessel to load a part of her cargo at Mobile, and to take on board outside the bar the part of the cargo she could not safely load at Mobile, when she is of such heavy draught as to be unable to cross the bar with a full and complete cargo; and uncontradicted testimony in the case satisfies me that the custom in such contingency is for the vessel to pay the lighterage to the lower bay, in the absence of any express stipulation on the subject in the contract. There is no stipulation in the charter-party under consideration providing for such expense. Such case, then, not being expressly provided for by the terms of the contract, the custom of the port is to be observed. The evidence on the subject does not show that the usage has become so notorious or been so acquiesced in as to have the force of law, but it does show that there was a custom, certain and general, for the vessel to pay the lighterage to the lower bay when there is no stipulation in the contract to the contrary.

My opinion, therefore, is that, under the terms of this charter-party, the vessel was chargeable with the lighterage, irrespective of any custom, and that, according to the custom of the port, she was so chargeable. In either case the libelant is not entitled to recover, and the libel must be dismissed at his cost.