## WITHERS v. MOORE.*

### S. F. No. 2541; February 26, 1903.

#### 71 Pac. 697.

**Sale—Coal to be Imported—Construction of Contract.**—A San Francisco merchant cabled to a coal dealer in New South Wales an offer to purchase two cargoes of coal, which read: "Offer subject to immediate reply twenty-four shillings cost freight and insurance exchange duty paid two cargoes," etc. The coal dealer replied, "Ulti-

*For subsequent opinion in bank, see 140 Pac. 591, 74 Pac. 159.

matim twenty-four shillings and three pence." The merchant cabled, accepting this offer, and later wrote the coal dealer, "We beg to confirm having purchased from you [stating kind of coal and price] 'cost,' 'freight,' 'insurance,' 'exchange,' 'duty paid,' " etc. Held, that the contract would be construed to mean that the coal should be delivered at its destination with all enumerated charges, including customs duties, paid by the seller, whatever they might happen to be at the time of delivery, the purchaser having no advantage of an intermediate reduction in customs duties.

**Sale—Coal to be Imported—Customs Duties.—The Purchaser's First Cablegram** contained the words, "Our usual form of charter-party," and in writing to the seller, confirming the contract, the purchaser said, "The vessels to be chartered under our usual form of charter-party as per copy previously sent you, and to contain all the clauses contained therein." He also stated that he forwarded by that mail a few originals and copies of the charter-party. The charter-party taken by the seller provided that, "being so loaded shall therewith proceed to San Francisco Harbor and deliver the said full and complete cargo in the usual and customary manner"; and again, "All port charges, pilotages, wharfage dues, and charges at port of discharge," etc., "to be paid by the ship as customary." Held, that if the purchaser had contemplated an advantage to him from a reduction of custom duties, as a feature of his form of charter-party, it should have been specifically mentioned, failing which he could not rely on the charter-party as conferring on him that advantage, in obedience to a claimed custom of the port.

**Custom and Usage.—Where the Court Hold That a Contract has not Been Made** with reference to a custom, evidence as to the existence of the custom is properly struck out as immaterial.

**Custom and Usage.—Code of Civil Procedure, Section 1870, Subdivision 12,** provides that evidence of usage may be given to explain the true character of an act, contract or instrument, where such true character is not otherwise plain, but usage is never admissible except as in an instrument of interpretation. A San Francisco merchant cabled to a coal dealer in New South Wales, "Offer subject to immediate reply twenty-four shillings cost freight and insurance exchange duty paid two cargoes." The coal dealer replied, "Ultimatim twenty-four shillings and three pence." The merchant responded by letter confirming his cabled acceptance, and saying, "We beg to confirm having purchased from you [stating kind of coal and price] 'cost,' 'freight,' 'insurance,' 'exchange,' 'duty paid,' " etc. Held, that the contract of sale thus evidenced was free from ambiguity, so that extrinsic evidence of a custom of the port of San Francisco giving to the purchaser of imported goods the advantage of a reduction of customs duties was inadmissible.

**Payment.—A San Francisco Merchant Purchased Coal from a Dealer** in New South Wales. The dealer drew a draft on the merchant

for an amount less than the agreed price under the existing customs duties. Afterward the customs duties on the purchase were reduced, and later the cargo arrived. Held, that payment of the draft was on account and not in full satisfaction.

Charter-party.—A San Francisco Merchant Purchased Coal from a Dealer in New South Wales, stipulating that his form of charter-party should be used by the dealer. In violation of this stipulation, the charter-party actually employed omitted a clause providing that, if the vessel should be free from wharfage during discharge, the freight was to be reduced 4½d. per ton. Held, that this breach of contract would not justify the purchaser in rejecting the cargo, it being his duty to perform his part of the contract, and seek compensation in damages.

APPEAL from Superior Court, City and County of San Francisco; Edward A. Belcher, Judge.

Action by Henry J. Withers against John J. Moore. From a judgment for plaintiff and from an order denying a motion for a new trial defendant appeals. Affirmed.

Gordon & Young for appellant; Richard C. Harrison for respondent.

CHIPMAN, C.—Action on contract for the purchase of coal to arrive at San Francisco from Newcastle, New South Wales. Plaintiff had judgment, from which, and from the order denying his motion for a new trial, defendant appeals.

It is alleged in the complaint that defendant agreed in writing with plaintiff about October 12, 1893, to purchase from plaintiff two cargoes of coal at 24s. 3d. per ton, delivered alongside wharf at Oakland or San Francisco, the first to be shipped from Newcastle, New South Wales, between March 1 and May 31, 1894, and the second August 1, 1894, and October 31, 1894, "in vessels to be chartered under the usual form of charter-party of the defendant"; that on September 15, 1894, a cargo was delivered to and accepted by defendant as and for the first of said two cargoes, on account of the purchase price of which defendant paid a part, leaving still due and unpaid $1,657.75; that about October 31, 1894, plaintiff shipped a cargo by vessel named "Poltalloch" for the second of said cargoes; that said ship had theretofore been chartered by plaintiff for said voyage, under a charter-party of said form, and that plaintiff fully complied with said contract of October 12, 1893; that said ship arrived at San Francisco about January 23, 1895, prior to which defendant notified

plaintiff that he would not accept said cargo when the same should arrive; that plaintiff tendered said cargo to defendant, and offered to deliver the same to him, but defendant refused to accept it, whereupon plaintiff sold the same for the best obtainable price, realizing therefor the sum of $4,428.49 less than defendant had agreed to pay therefor. In two other counts the cause of action is set forth in somewhat different form. Defendant admits the contract, but claims in his answer that the charter-party was "subject to the custom and usage in the city and county of San Francisco among coal dealers and coal merchants, and sellers and buyers and shippers of coal, which custom and usage is, and was at all the times mentioned in the complaint, and for many years prior thereto, 'that any alteration in present rate of import duty to be for or against the purchaser,'" meaning thereby that, if the rate of duty should be less at time of importation than at the date of contract, the purchaser should receive the benefit, but, if greater, then the purchaser should be liable to pay such excess of duty in addition to the price of coal. It is also alleged that the charter-party made by plaintiff was in some material particulars different from the form usual with defendant; that the payment made on the first cargo was in full satisfaction thereof. It was alleged in one of the counts of the complaint that disputes had arisen prior to September 28, 1894, touching the meaning of the contract of October 12, 1893, which had been settled by plaintiff and defendant agreeing that defendant should have deducted from the price of said coal the sum of £43 2s. 9d., from the price of the first cargo. This is denied in the answer which alleges that the agreement was that the sum of 4½d. per ton should be deducted for wharfage by reason of the fact that said coal would be free from wharfage, and also thirty-five cents per ton import duty, being the difference between the duty at the date of the contract and the date of delivery. The court found the contract as alleged in the complaint; that it was not made subject to any custom or usage; that the usual form of charter-party of defendant provided for a reduction of 4½d. from the freight to be charged in the charter-party, should the vessel be free from wharfage; that plaintiff and defendant agreed after the contract was made that, if the vessel paid no wharfage, the price of the coal should be reduced 4½d. per ton; that the first cargo was received by defendant

under the contract as and for the first cargo; that the second cargo was shipped and arrived and was tendered to defendant as alleged in the complaint, and refused by defendant, and the cargo sold, as alleged; that neither of said cargoes paid wharfage at this port. The court also found the facts as to the value of said cargoes, the amount paid on account of the first, the amount still due thereon, the amount for which the second cargo sold, and the amount still due thereon, as alleged, and, as conclusion of law, found that there was due plaintiff from defendant the sum of $4,126.43. As near as we can ascertain from the record, the court arrived at this balance by deducting from the contract price of each cargo 4½d. per ton for free wharfage, and by allowing plaintiff the reduction in the rate of duty which went into effect July 1, 1894, and by allowing plaintiff, also, the difference between the contract price on the second cargo, less 4½d. per ton, and what it brought in the open market when sold to the best advantage.

1. The point most seriously urged by appellant, and apparently the only one on which the court found against him, is, that the contract was subject to the custom alleged in the answer.

Plaintiff resided in London, England, and the contract was entered into by cable messages with defendant, who resided in San Francisco. Plaintiff testified: "I have never had any other dealings in coal with any other firm or person in San Francisco, other than as set out above"; i. e., with defendant and one other shipment. "The contract in suit . . . . was made quite independent of the custom or usage in the port of San Francisco." He testified that he knew of no custom such as is alleged when he made the contract, and did not learn of it until some months afterward, when defendant claimed the benefit of it. Appellant relies on the following clauses of the charter-party: ". . . . and being so loaded shall therewith proceed to San Francisco Harbor . . . . and deliver the said full and complete cargo in the usual and customary manner," etc.; again, "all port charges, pilotages, wharfage dues, and charges at the port of discharge and half cost of weighing at port of discharge to be paid by the ship as customary." Respondent contends that the contract on which the suit was brought was a contract of sale and pur-

chase, entirely distinct from the charter-party, which latter was between the charterer (the plaintiff and seller in this case) and the ship owner, in which defendant was not known, and by which he is not bound, and the provisions of the charter do not concern defendant. The terms of the sale were settled by cable, afterward confirmed by mail. Defendant's cable offer was made October 10, 1893, for two cargoes of coal, and read as follows: "Offer subject to immediate reply twenty-four shillings cost freight and insurance exchange duty paid two cargoes 2,500 tons to 3,500 tons March, April, May loading August, September, October loading. Our usual form of charter-party. Advise you to accept offer. No prospect of doing better." Some further correspondence by cable ensued, and on October 12, 1893, plaintiff cabled: "Ultimatum twenty-four shillings and three pence. Others appear to be able to do better. Telegraph confirmation." On the same day defendant cabled: "Offer accepted. We have guaranteed equal to Elinshire." On October 14, 1893, defendant wrote plaintiff in further confirmation, and inclosing copies of the cable messages which had passed between the parties, stating, among other things: "We beg to confirm having purchased from you [stating kind of coal and price] 'cost,' 'freight,' 'insurance,' 'exchange,' 'duty paid,' alongside wharf in this city or Oakland. . . . . The vessel to be chartered under our usual form of charter-party (as per copy previously sent you) and to contain all the clauses contained therein," except as stated in the letter. It was also stated that defendant was forwarding by that "mail a few originals and copies of our charter-party." On April 18, 1894, plaintiff chartered a ship named "Highfields" to carry the first of the two cargoes referred to in defendant's letter of October 14th. This charter-party did not conform in all respects to the form furnished by defendant, but complaint is now urged only as to the clauses above quoted relating to custom, and a clause reading: "Should vessel be free from wharfage during discharge, the above freight to be reduced by 4½d. per ton." As to this latter clause the court found in favor of appellant but the finding is that the allowance for free wharfage was because of a subsequent contract. However, as appellant got the benefit of the clause, he is not injured by the finding, if it be conceded to be based on a subsequent, rather than the original, contract.

By the terms of the contract the seller agreed to pay the duty, whatever it might be. He did not agree to make a rebate on the price of the coal, should the duty be less when the coal was delivered than when the contract was first made; nor did the purchaser agree to pay more by reason of an increase in the rate of duty. It would be as reasonable to say that the price to be paid for the coal was to vary; i. e., was to be less or more as the cost, freight, insurance or exchange might vary. The plain meaning of the contract was that the coal should be delivered at Oakland wharf with all the enumerated charges paid by the seller, whatever they might happen to be, at the time of delivery. The seller took the chance of any advance in the duty, and the buyer took the chance of the seller being the gainer by any reduction in the duty. It is clear to our minds that the language of the contract will bear no other consideration.

The charter-party made no mention of the provision in the contract of purchase and sale as to the payment of duty by the seller, and it would not naturally or necessarily be included, for it was no part of the charges which the ship owner would ordinarily be concerned with. If this item had been in contemplation of defendant as a necessary part of his form of charter-party, it should have been included, and not left to such vague and uncertain expressions as "port charges" or delivery to be "in the usual and customary manner," which suggests nothing contrary to the terms of the contract. Not being included, we can look only to the contract to determine what the agreement was as to payment of duty, and there the provision is plain, as we have already said, that plaintiff was to pay the duty, whatever it might be. The only debatable question is whether the court erred in its finding that this contract was not subject to the custom alleged by defendant, and also erred in finally striking out all evidence as to custom. The evidence on both sides was taken subject to a motion to strike out. There is a conflict on the question whether such a custom in fact prevailed generally among coal dealers in San Francisco. But the court reached the conclusion that the contract was not made with reference or subject to any custom, and, if it was not so made, certainly the evidence relating to custom or usage was immaterial.

Aside, however, from other considerations which fully sustain the trial court in excluding the evidence where the inten-

tion of the parties is clearly expressed, parol evidence is inadmissible to prove a different intention. In Burns v. Sennett, 99 Cal. 363, 33 Pac. 916, cited by appellant, the court said: "A usage, of course, cannot be given in evidence to relieve a party from his express stipulation, or to vary a contract certain in its terms, but it has a legitimate office in aiding to interpret the intention of parties to a contract, the real character of which is to be ascertained, not from express stipulations, but from general implications and presumptions." And so the provision of the Code of Civil Procedure cited by appellant (section 1870, subdivision 12) provides that evidence of usage may be given "to explain the true character of an act, contract, or instrument, where such true character is not otherwise plain; but usage is never admissible except as an instrument of interpretation."

The cases cited by counsel are in harmony with the rule of our code—for example, Nordaas v. Hubbard (D. C.), 48 Fed. 921, holding that "evidence of usage is . . . . admissible to explain a contract, where otherwise the intention of the parties cannot be ascertained"; and Robinson v. United States, 13 Wall. 363, 20 L. Ed. 653, where such evidence is received to explain the intention of the parties to a contract, "the meaning of which could not be ascertained without the aid of extrinsic evidence." The contract here is quite plain and free from ambiguity or uncertainty. Not only is extrinsic evidence unnecessary to explain the meaning of the contract, but to admit proof of the custom would change the obligation of defendant to pay 24s. 3d. per ton for coal to an obligation to pay thirty-five cents less per ton.

As to the evidence, it appears that a controversy arose early in the business about the alleged variance in the Highfields charter-party, and this was finally settled by plaintiff conceding the point as to the free wharfage. The reduced duty on coal did not go into effect until July 1, 1894. Much correspondence was carried on concerning both charters before and after July 1, 1894; but defendant made no claim that any custom prevailed in San Francisco, such as is pleaded, until in his letter of September 26, 1894, which was a month after the second charter-party was made, and some time after the "Poltalloch," (the second chartered ship) had been loaded. This was a letter in reply to plaintiff's letter to defendant of September 5th, in which he wrote: "In regard to the High-

fields cargo I presume you only paid the reduced duty and that you will shortly remit difference as desired in my former letters.''

2. It was alleged in the answer of defendant, and it is now urged, that the payments made by defendant to plaintiff on account of the first cargo were in full satisfaction and payment therefor. We find nothing in the evidence to support this claim. Plaintiff on June 1, 1894, drew a draft on defendant for a certain sum, but there is no evidence to show that this was intended by plaintiff to be for the full balance he then claimed to be due him from defendant. At that time the duty had not been reduced, and the cargo had not yet arrived. The payment was on account, and not in full satisfaction.

3. A breach relied on in the contract relating to the second or ''Poltalloch'' shipment, as justifying the rejection of the cargo, is the omission of the free wharfage clause from the charter-party. Assuming that it was a condition of the contract that defendant's form of charter-party was to be used, this omission was a breach which could be, and was in fact, by the judgment of the court, fully compensated by allowing defendant credit for the amount of wharfage charges which plaintiff was relieved from paying, and defendant cannot complain. His duty was to perform his part of the contract, and seek compensation in damages. The court gave him his compensation, and he can ask no more. The principle will be found stated in Fountain v. Semi-tropic L. & W. Co., 99 Cal. 677, 34 Pac. 497.

The judgment and order should be affirmed.

We concur: Gray, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.