[No. 14955. Department Two.—August 26, 1893.]

PATRICK BURNS, Respondent, *v.* SENNETT AND MILLER, Appellants.

Master and Servant—Negligence of Fellow-servant—Personal Duty of Master—Safe Appliances—Adjustment by Servants.—An employee cannot recover judgment against his employer for personal injuries caused by the negligence of a fellow-servant, unless the employer has entrusted to such fellow-servant the discharge of a duty which the employer personally owes to his servants to use reasonable care in the selection and construction of reasonably suitable and safe machinery and appliances for the employee to do his work; but in cases where by the contract of employment, express or implied, the employees are to adjust the appliances by which the work is to be done, the employer is only bound to furnish proper materials from which to construct such appliances, and is not bound to see that they are properly constructed or adjusted, and is not liable to a servant for the negligence of a fellow-servant in making such adjustment.

Id.—Appliances of Stevedore—Temporary Adjustment—Defective "Strap"—Negligence of Fellow-servants.—The various isolated and detached pieces of machinery and appliances of a stevedore, when put together for the

| 99 | 363 |
| 102 | 392 |
| 102 | 464 |
| 102 | 582 |
| 99 | 363 |
| 112 | 682 |
| 99 | 363 |
| 113 | 603 |
| 99 | 363 |
| 124 | 190 |
| 99 | 363 |
| 135 | 439 |
| 99 | 36" |
| 138 | 511 |
| 138 | 526 |
| 99 | 363 |
| 140 | 597 |
| 141 | 735 |
| 146 | 774 |
| 99 | 363 |
| 148 | 280 |
| 99 | 363 |
| 149 | 42 |

purpose of loading or unloading a particular ship, cannot be considered as one entire and permanent machine or appliance; but from the nature of his business the temporary adjustment of these detached pieces has to be frequently made, and where it is shown to be part of the contract of employment of a gang of men to load a ship, that they are to adjust the appliances with which they are to work, the employer is not liable to an employee for the negligent omission of fellow-employees in adjusting the "strap" to "parcel" it, or cover it with canvas, so as to prevent it from being chafed by contact with the cross-trees, and from breaking or giving away.

ID. — EVIDENCE — CONTRACT OF EMPLOYMENT. — In an action against a firm of stevedores for negligence in omitting to "parcel the strap" for the loading of a vessel, whereby it gave way, and caused a load to fall upon an employee to his injury, the defendants have a right to prove that by the contract of employment, the gang of men employed to load the vessel were required as part of the work for which they were hired to put up and take care of all the gear and tackle necessary for their use.

ID. — PROOF OF USAGE — CUSTOM OF STEVEDORE. — It is competent in such action for the defendants to prove a usage or custom of stevedore which entered into the general employment of a gang of men to load or unload a ship, in the absence of a special contract, and that such usage or custom was known to the gang employed, to the effect that the gang was required and expected to put up and take care of the gear and tackle, and that the master undertook to furnish only suitable material for that purpose.

ID. — USAGE, WHEN ADMISSIBLE. — Though evidence of usage is not admissible to relieve a party from his express stipulation or to vary a contract certain in its terms, it has a legitimate office in aiding to interpret the intention of the parties to a contract, the character of which is to be ascertained from general implications and presumptions.

ID. — USUAL MANNER OF PUTTING UP "STRAP." — Upon the question of reasonable care, upon the assumption that putting up the "strap" was the personal duty of the employer, the employer is entitled to show that it was "put up in the manner in which such straps are usually put up," though such evidence would not be conclusive proof of due care; but it is proper matter to be considered by the jury in arriving at a conclusion upon the subject.

ID. — CONTRIBUTORY NEGLIGENCE — CONFLICTING EVIDENCE — QUESTION FOR JURY. — Whether or not the person injured by the fall of the load was guilty of contributory negligence in standing under the ascending load, where the evidence was conflicting on that point, is a question for the jury.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Mastick, Belcher & Mastick,* for Appellants.

The court erred in excluding the testimony offered by defendants, as to the custom in San Francisco in relation to the duties of stevedores under a general employment. (*Taylor* v. *Castle,* 42 Cal. 367, 371; *Hayes* v. *Wells, Fargo & Co.,* 23 Cal. 185, 188; 83 Am. Dec. 89; *Brown* v. *Howard,* 1 Cal. 423, 424;

*Gillett* v. *Mawman*, 1 Taunt. 137; *Vaughn* v. *Gardner*, 7 Mon. B. 326, 330; Wharton on Evidence, 3d ed., secs. 961 *a*, 962, 969; Wharton on Contracts, sec. 637; Civ. Code, secs. 1645–1647, 1655, 1656; Code Civ. Proc., sec. 1870, subd. 12; sec. 1963, subd. 20.) The court erred in refusing to permit defendants to prove that the strap in question was put up in the manner in which such straps are usually put up. (*Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal. 48; *Lehigh etc. Co.* v. *Hayes*, 128 Pa. St. 294; 15 Am. St. Rep. 680; *Augerstein* v. *Jones*, 139 Pa. St. 183; 23 Am. St. Rep. 174; *Allison etc. Co.* v. *McCormick*, 118 Pa. St. 519; 4 Am. St. Rep. 613.) Negligence, for which defendants can be held liable in this action, can consist only in the failure to perform some duty which they owed to the plaintiff. In order, therefore, for plaintiff to recover, it was necessary for him to prove, by a preponderance of evidence, that defendants failed to perform some particular duty with relation to the strap in question, which they were bound to perform for plaintiff's benefit. (*De Graff* v. *New York etc. R. R. Co.*, 76 N. Y. 125; *Sack* v. *Dolese*, 137 Ill. 129; *Dobbins* v. *Brown*, 119 N. Y. 188; *Oehme* v. *Cook*, 7 N. Y. Supp. 764; *Philadelphia etc. Co.* v. *Hughes*, 119 Pa. St. 301; *Georgia etc. Co.* v. *Nelms*, 83 Ga. 70; 20 Am. St. Rep. 308; *Davidson* v. *Davidson*, 46 Minn. 117; *Hotis* v. *New York etc. R. R. Co.*, 6 N. Y. Supp. 605; *Carlson* v. *Phœnix Bridge Co.*, 55 Hun, 485; *Humphreys* v. *Newport etc. Co.*, 33 W. Va. 135.) The evidence was insufficient to justify the verdict. (*Minty* v. *Union Pacific R'y Co.*, Idaho, March 11, 1889, 21 Pac. Rep. 660; *Elliott* v. *St. Louis etc. R. R. Co.*, 67 Mo. 272; *Huff* v. *Austin*, 46 Ohio St. 386; 15 Am. St. Rep. 613; *Eicheler* v. *Hanggi*, 40 Minn. 263; *Hudson* v. *Charleston etc. R. R. Co.*, 104 N. C. 491; *Reid* v. *Central etc. R. R. Co.*, 81 Ga. 694; *Faber* v. *Carlisle Manuf. Co.*, 126 Pa. St. 387; Civ. Code, secs. 1970, 1971; *Congrave* v. *Southern Pacific R. R. Co.*, 88 Cal. 360. See also authorities *supra*.)

*Mich. Mullaney*, and *William Grant*, for Respondent.

The evidence was sufficient to show gross negligence and to sustain the verdict. (*Davies* v. *Oceanic Steamship Co.*, 89 Cal. 283. See *Brown* v. *Sennett*, 68 Cal. 226; 58 Am. Rep. 8.) Before, and up to the time the accident occurred, everything

available to plaintiff's observation was in its usual condition, and running in the usual and proper way, and the cause of the accident was not in any way either known to or discoverable by plaintiff; but was entirely attributable to defendant. Hence, the liability of defendant is conclusively fixed. (*Beeson* v. *Green M. etc. Co.*, 57 Cal. 26, and the numerous authorities there cited; *Trask* v. *California etc. R. R. Co.*, 63 Cal. 96; *Magee* v. *North Pacific C. R. R. Co.*, 78 Cal. 437; 12 Am. St. Rep. 69; *Griffin* v. *Boston etc. R. R. Co.*, 148 Mass. 143; 12 Am. St. Rep. 526.) The question as to usage or custom was immaterial as the facts were plain, and there was nothing which could be governed by usage or custom. (*Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal. 48.)

McFARLAND, J.—This is an action to recover damages for personal injuries alleged to have been caused by the negligence of defendants. Verdict and judgment were for plaintiff; and defendants appeal from the judgment and from an order denying their motion for a new trial.

Appellants were stevedores; and at the time respondent was injured they were engaged in loading wheat into a certain ship named "Chala," for which purpose they had employed a gang of workmen, and a foreman named Wyatt. On June 7, 1889, respondent was one of the gang, and assisting to load the wheat into said ship. His particular work at the time was that of what is called a "sling-man"—that is, it was his duty to place on the wharf a "sling" or endless ring of rope, and after the warehousemen had placed thereon a certain number of sacks of wheat, to bring the ends of the sling up over the load, to "reeve" one end of the sling through the other, to put the lift hook through the loop, and to steady the ascending load while within his reach, and then get ready another sling for the next load. When the lift-hook was put into the loop, the load was raised by steam power applied through certain machinery and apparatus until it was above the side of the ship, when it was pulled aboard by another employee. On the day last named while a load of wheat was thus ascending it suddenly dropped upon respondent, and caused the injuries for which he seeks damages in this action.

The transcript contains minute descriptions of the various things, which when put in place and properly united and adjusted, constitute the apparatus used in loading or discharging cargoes, but it is sufficient to say here that they consist of a hoisting engine and certain ropes, working blocks and tackle, pulleys, straps, hooks, swivels, etc. And with respect to the cause of the accident by which respondent was injured, it is sufficient to say that most of the apparatus is to a great extent sustained and kept in place by being attached by hooks to what is called a "strap," which is a ring of rope placed around the masthead just above the cross-trees; and that the falling of the load of wheat was caused by the breaking or giving way of this "strap." The strap was constructed and put in place by employees assigned to that work by the foreman. The strap should have been "parcelled"—that is, properly wrapped or covered with canvas so as to prevent it from being chafed by contact with the cross-trees. We do not think that there was evidence in this case to warrant the jury in finding that the accident by which respondent was hurt was caused by the negligence of any person, except in this respect; we think that possibly, taking all the evidence and circumstances in proof, the jury were warranted in finding that the accident was caused by the negligent manner in which the strap was constructed, adjusted, or parcelled. The question in the case, therefore, assuming that there was such negligence, is this: Are appellants liable to respondent for the result of the said negligence as to said strap? And this can be correctly answered only by determining whether or not the proper placing and maintaining of the strap was a positive duty which the appellants personally owed to respondent. (*Daves* v. *Southern Pacific R. R. Co.*, 98 Cal. 19; *Baltimore etc. R. R. Co.* v. *Baugh*, 149 U. S. 368.)

The general rule is well established that an employee cannot recover judgment against his employer for personal injuries caused by the negligence of a fellow-servant. The authorities to this point are numerous; but it is only necessary to cite here the most recent decisions of this court upon the subject—*Daves* v. *Southern Pacific R. R. Co.*, 98 Cal. 19, and *Congrave* v. *Southern Pacific R. R. Co.*, 88 Cal. 360—and the recent decision of the supreme court of the United States in *Baltimore etc.*

*R. R. Co.* v. *Baugh*, 149 U. S. 368. And if in the case at bar the adjustment and maintenance of the said strap was not a duty which appellants owed personally to respondent, then all the gang of men employed by appellants in loading the ship were fellow-servants, and respondent could not recover of appellants for injuries caused by the negligence of one or more of said fellow-servants in constructing, parcelling, etc., said strap.

There is another general rule, however, under which alone, upon the facts so far appearing, respondent can maintain this action — if he can maintain it at all; and that general rule is that an employer must furnish machinery and appliances reasonably suitable and safe for the employee to do his work. In such a case the employer is, of course, not bound to insure the employee against any defect in such appliances; but he is bound to use reasonable care in their selection or construction. And where that rule applies, the duty to furnish such machinery and appliances is one which the employer owes personally to the employed; and he cannot escape that duty by trusting it to an employee who negligently performs it. Does that rule apply to the case at bar, and were there any errors prejudicial to appellants committed by the court below bearing upon that question?

While the general rule is as above stated, still it is well established that the rule does not apply to a case where several persons are employed to do certain work, and by the contract of employment, either express or implied, the employees are to adjust the appliances by which the work is to be done. For instance, if several men are employed to paint a building or to do some work upon it which requires scaffolding, or some other temporary structure or appliance to support the workmen — the employer to furnish the materials and the employed to construct or adjust the scaffolding or other appliance — the employer is not liable to one of the employees for the careless act of another employee done in the construction, adjustment, or maintenance of the structure or appliance. There are many cases establishing and illustrating this principle and applying it to a variety of facts, a few of which are the following: *Peschel* v. *Chicago etc. R'y Co.*, 62 Wis. 338; *Butler* v. *Townsend*, 126 N. Y. 105; *Killea* v. *Faxon*, 125 Mass. 485; *Ross* v. *Walker*, 139 Pa.

St. 42; 23 Am. St. Rep. 160; *Benn* v. *Null*, 65 Iowa, 407; *Bowen* v. *Chicago etc. R'y Co.*, 95 Mo. 268.

With respect to the giving and refusing of instructions on the point above stated, it would be impossible, within reasonable limits, to notice each instruction in detail; and we will confine ourselves to a general view of them. Some of the instructions asked by appellants and refused or modified by the court—particularly Nos. 3, 7—might well have been given as asked; but we cannot say that appellants were prejudiced by their refusals in view of the fact that the court, at appellants' request, gave instruction No. 6, which is as follows: "If a master employs servants to perform a particular service, in the course of which it is necessary for them to construct and adjust machines or appliances for their own use in such service, then, in the absence of any special contract to the contrary, the master is only bound to furnish proper materials from which to construct such machines or appliances, and is not bound to see that such machines or appliances are properly constructed or adjusted." But the charge given by the court of its own motion to the jury, while in the main correct, seems to overlook or ignore the principle contained in said instruction No. 6. It may be plausibly argued that the jury are presumed to have considered the charge of the court as modified by said instruction No. 6; but as the said instruction was an isolated one, given at the request of a party, the jury would have much more surely understood the court, if, in its own charge, it had made express reference to the principle stated in said instruction. We do not see, at present, that the instructions on this point are subject to further criticism. We have said enough, we think, on the subject to guide the court in the event of another trial.

We think, however, that the court did not carry out the principle of said instruction No. 6 in ruling upon the admissibility of evidence; and that errors prejudicial to appellants were committed in excluding certain testimony which they offered.

We do not think that the various isolated and detached pieces of machinery and appliances above described, when temporarily put together for the purpose of loading or unloading a particular ship, can be properly considered as one entire

and permanent machine or appliance in the sense, for instance, in which a locomotive or a railroad track may be so considered. (*Peschel* v. *Chicago etc. R'y Co.*, 62 Wis. 342.) It is evident from the nature of the business of a stevedore that the temporary adjustment of these attached pieces has to be frequently made—as often as they are removed from one ship to another. Now it is contended by appellants that when a gang of men are employed to go to work at loading a ship, it is a part of the contract of employment that they are to adjust the appliances with which they are to work; and that to make the adjustment is not a duty owing personally by the employer. If this be so, then the employer is not liable to the employee for damages caused by the negligent act of another employee in making such adjustment. In order to prove that the employment was as contended, appellants asked their witness Wyatt, who was their foreman, and an experienced stevedore, these questions: "Q. Is there a custom among stevedores in San Francisco in regard to the putting up of gear and tackle for discharging and loading ships? Q. What is the custom, if there is any, of stevedores in San Francisco, as to putting up gear and tackle for discharging and loading ships? Does the master stevedore undertake to furnish the men with gear and tackle put up and in order, or is it a part of the work for which the men are hired to put up their own gear and tackle and take care of it?" To these questions respondent objected as "incompetent, immaterial, and irrelevant," and the objection was sustained. Appellants then in connection with the last question, made the following offer: "We propose by this question, and by others which will follow it, to prove by this witness and other witnesses whom we propose to call, that by the custom of stevedores in San Francisco, at and before the time of plaintiff's employment, the gang of men employed to discharge or load a vessel were required, as a part of the work for which they were hired, to put up and take care of all the gear and tackle necessary for their use; the master undertaking to furnish only suitable rope, blocks, and other material for that purpose; that this custom was well known to plaintiff at the time; that he and his fellow-members of the gang were employed under that custom, and without any contract to the contrary, for the discharge and loading of the ship so far as he was employed in it."

To which the same general objection was sustained. The witness was then asked this question: "When you hired this gang of men was it their duty to take care of the gear and tackle? Were they hired for that purpose?" and a general objection to the question was sustained. Of their witness Redmond, also an experienced stevedore, appellants ask these questions: "Q. What does the master stevedore furnish to the gang of men when he has taken the job of discharging a ship? Q. Does the master stevedore undertake or contract to furnish to the gang of men employed to discharge or load a ship anything except the material to put up, which, when put up, will constitute the rigging necessary for the work to be done? Q. What, if anything, does the master stevedore contract to furnish to the gang of men employed to load or discharge a ship?" To each of these questions the general objection was made that it was "irrelevant, immaterial, and incompetent," and the objection was sustained. Appellants duly excepted to all of said rulings.

We think that in sustaining the objections to the above questions and offered evidence the court erred. There possibly may have been some valid special objections to the form of some of the questions, or to some particular language used as calling for the opinion of the witness; but we think that the general objections to them should have been overruled. The purpose of the offered evidence was to show what the *real contract was* between the employer and the employed, which the other evidence in the case left in doubt. For instance, we cannot imagine what valid objection there could be to the question: "Were they hired for that purpose?" Moreover, we think that so far as the offered testimony involved proof of the usage, if any such there were, which entered into a general employment to load or unload a ship, in the absence of a special contract, it should have been admitted. A usage, of course, cannot be given in evidence to relieve a party from his express stipulation, or to vary a contract certain in its terms; but it has a legitimate office in aiding to interpret the intentions of parties to a contract, the real character of which is to be ascertained, not from express stipulations, but from general implications and presumptions. Section 1982 of the Civil Code provides that "an employee must perform his service in conformity to the usage of the place of performance";

and the general doctrine of usage has frequent express recognition in the codes. (See Civ. Code, secs. 1645–1647, 1655, 1656; Code Civ. Proc., sec. 1870, subd. 12; sec. 1963, subd. 12. See also *Fraylor* v. *Sonora M. Co.*, 17 Cal. 595; *Winans* v. *Hassey*, 48 Cal. 634; *Gillett* v. *Mawman*, 1 Taunt. 137; *Vaughn* v. *Gardner*, 7 Mon. B. 330.) Our opinion, therefore, is that appellants should have been allowed to introduce evidence of the existence of said usage, and that the court erred in excluding the said testimony offered for that purpose; and it is quite clear that if such testimony was admissible it was material, and that its exclusion was prejudicial to appellants. The fact that the date of respondent's employment was a day or two subsequent to that of the employment of some of the other men does not affect the operation of the rule. It was said by the court in *Butler* v. *Townsend*, 126 N. Y. 105, as follows: " The new servant takes the risk of any existing negligence of his fellow-servants as well as that which may thereafter occur. It may possibly be that if the lumpers had been discharged and ceased to be servants at all, and the defendants hiring others had furnished the erected and completed staging for their use, that a different question would have arisen, perhaps involving some new duty of the master; but nothing of that kind occurred. Caulkers and lumpers at the time of the accident were working together upon the same vessel, for the same general purpose, and under the common master when the negligence became operative which caused the injury. Tracing it back to an earlier origin is of no consequence, unless thereby some new duty of the master has been brought into existence."

There are only one or two other points necessary to be noticed.

Appellants excepted to a ruling of the court excluding evidence that respondent and appellants belonged to an association called the "Riggers' and Stevedores' Union," which undertakes to regulate and restrict the employment of men by stevedores. The exception is not pressed in the briefs; but as the point may arise on another trial, it is proper to say that we do not think that the court erred in excluding the evidence. It is barely possible that such evidence might be admissible under peculiar circumstances; but it was clearly not admissible when offered in this case.

Assuming that it was the duty of appellants to construct, adjust, and maintain the entire hoisting apparatus and appliances as a whole, still they could be held to only reasonable care in the premises, and it was admissible for them to prove that such care was exercised in constructing and adjusting said strap; and for that purpose we think that appellants were entitled to introduce evidence that the strap was "put up in the manner in which such straps are usually put up," and that the court erred in sustaining an objection to the question on that subject asked by appellants of their witness, George Wyatt. That fact, if proven, would not be conclusive proof of due care; but it was proper matter to be considered by the jury in arriving at a conclusion on the subject. The rule was properly stated by this court in *Barrett* v. *Southern Pacific R. R. Co.*, 91 Cal. 303; 25 Am. St. Rep. 186, as follows: "The fact that the turn-table was latched in the way such tables are usually fastened, or according to the usual custom of other railroads, although a matter which the jury had a right to consider in passing upon the question whether defendant exercised ordinary care in the way it maintained the table, was not of itself conclusive proof of the fact. (*Stout* v. *Sioux City etc. R. R. Co.*, 2 Dill. 294; *O'Malley* v. *St. Paul etc. R'y Co.*, 43 Minn. 289.)"

It is not necessary to consider the denial of appellants' motion for a continuance, or the matter of newly discovered evidence.

Whether or not respondent was guilty of contributory negligence in standing under the ascending load, was a question for the jury under the conflicting evidence on that point.

We notice no other points necessary to be discussed.

Judgment and order reversed, and cause remanded for a new trial.

DE HAVEN, J., and FITZGERALD, J., concurred.

Hearing in Bank denied.