[No. 4381.     Decided April 1, 1904.]

JOSEPH METZLER, *Appellant*, *v.* GEORGE McKENZIE, *Respondent.*[1]

MASTER AND SERVANT—SAFE PLACE—FALL OF TEMPORARY STAGING—CONSTRUCTION BY FELLOW-SERVANTS—SERVANTS EMPLOYED TO PREPARE PLACE. A carpenter cannot recover for personal injuries caused by the breaking of a defective plank used in the construction of a temporary staging erected by a fellow-carpenter, without any supervision by the employer or his foreman, where the carpenters at work on the building, including the plaintiff, were employed, and it was customary for them, to erect their own staging, and the employer furnished suitable material for the purpose, and provided competent co-servants, who failed to discover the defect in the plank on inspection, and no one had any notice thereof, since the negligence, if any, was that of a fellow-servant, and the rule as to the master's liability to furnish a safe place does not apply where the preparation of the place is itself a part of the work which the servants were employed to perform.

SAME. An order from the foreman to a fellow-carpenter to construct such staging does not constitute him a vice-principal while constructing the same.

Appeal from a judgment of the superior court for Snohomish county, Denney, J., entered April 11, 1902, upon granting a nonsuit at a trial before the court and a jury, in an action for personal injuries sustained by a carpenter in a fall from defective staging. Affirmed.

*John Tobin* and *Brownell & Coleman,* for appellant.

*Wilshire & Kenaga,* for respondent.

PER CURIAM.—Action brought by Joseph Metzler, plaintiff, against George McKenzie, defendant, in the superior court of Snohomish county, to recover compensation for personal injuries. Plaintiff was nonsuited at the trial, and appeals.

1Reported in 76 Pac. 114.

The only assignment of error is the granting of the non-suit by the trial court.  Appellant received the injuries of which he complained on or about the 20th day of September, 1901, while he was employed by the respondent as a carpenter in the construction of a brick building in the city of Everett.  Benjamin Thomas was the foreman of the carpenter work on this structure.    Thomas employed appellant, and had the authority to employ and discharge men in that line of work.

This building had progressed, at the time of the accident, to the laying of the joists just beneath the roof at the top of the third story.   To hold these joists in position, a piece of wood called "bridging" is nailed thereto, extending from the top of one joist to the bottom of the next.   In order to nail on the bottom part of this bridging, it was necessary to build a scaffold on which the carpenters could stand while at work.  This bridging is sawed at a proper angle at each end, in order that it may be nailed against the joists.  The sawing is done in what is called a "mitre box," which is a rough three-sided box without top or ends, into the two upright sides of which slits are sawed at the proper angle.   The piece of bridging is laid in the box, and the workman saws it through these slits to give it the proper angle.   The continuous sawing of bridging has the effect of making a saw cut into the bottom on the box.

It appeared from the testimony produced in appellant's behalf that, on the afternoon of the day of the accident, appellant and G. C. Kiehl, a fellow-carpenter, were at work on the top of the roof joists of the building in question, when foreman Thomas came up where the carpenters were at work and gave them directions for their further work.   Mr. Kiehl testified on this branch of the case as follows:

"Q. What did he tell you? A. Well, we was getting near the end of that work, and he says for a couple of us to go down and build a staging and finish nailing the bridging, and the rest could go down on the other floor; and I said, 'Will I go down and build the staging?' and he says, 'Yes;' so I started down and went to building the staging. Q. Who went with you? A. Nobody. Q. Who helped you in building that staging? A. Well, Van Bergen was piling up some planks, and pulling them up from below, and he handed up some planks to me. Q. He handed you the material did he? A. Yes, sir. Q. Did you do the entire construction work yourself? A. I did. Q. Explain to the jury just how you built the staging? A. Well, the staging was built along in the front part of the room . . .; there is a partition running over here, the joists running up and down, and I nailed the plank on the joists and let the other end go over on a part of the window like that; and after I had that done, I took some planks and laid them across the braces, for us to walk on to nail the bridging in the joists overhead."

Witness further said that those planks were about eight feet from the floor, that the ceiling at that place was fourteen feet high, and could be reached easily from the planks. Foreman Thomas was on the third floor when Kiehl commenced to build this scaffold, but gave no directions as to details. The material used in its construction was taken by Van Bergen from a pile of lumber, and handed to Kiehl as he needed it. In this pile there was a plank which had once been used for the bottom of a mitre box, and was sawed nearly half-way in two. As this plank was laid in the pile, the saw cut was down, and Van Bergen, without noticing the cut, raised and handed the plank to Kiehl, who laid it on the cross pieces with the cut on the under side. Kiehl and Van Bergen knew nothing of this cut before the time of the accident. Both were inspecting planks for knots, but not for saw cuts, and found the plank with the cut particularly free from knots. In appearance

the plank was new, like the rest of the lumber that had come from the mill with the general bill of lumber used in the building. There were other sound planks in the pile which could have been used in its place. Appellant in his brief admits that "Kiehl and Van Bergen were competent men in their respective positions."

Appellant Metzler testified that it is customary for carpenters to put up temporary staging while engaged at work on buildings. The testimony also showed that Thomas was a competent foreman, that he was not present when the planks were handed up, that Metzler, having finished the job on the roof, went to foreman Thomas, who was then on the floor of the third story, for orders. Thomas told him to go and help Kiehl nail the bridging. Metzler went upon the roof, procured his hammer, walked over the roof joists to a place just above the scaffold, and swung himself down to the floor of the scaffold at the west end. Metzler started nailing from the west, moving, as he worked, towards the east end of the building. Kiehl was working from the opposite direction towards Metzler. It so happened that these parties met on this plank with the saw cut on its underside. At the time of the accident, Metzler was reaching up in the act of driving a nail. When Kiehl moved towards him, the plank broke suddenly at the place of the cut, throwing both men to the floor. Kiehl escaped unhurt, but appellant's wrist was broken, and he sustained other injuries. It is not pretended that respondent, or his foreman, Thomas, had any knowledge as to the saw cut in this plank. Appellant, at the time of this accident, had been working on the building in question over one month. He swore that he did not know of the cut in this plank when he stepped on to this scaffold.

This court has, by repeated decisions, affirmed these legal propositions: (1) It is a positive duty which the

master owes to his employee to furnish such employee with reasonably suitable and safe machinery, means, and appliances for doing the work which the servant is employed to do, and to provide him a reasonably safe place in which to work; that, this duty being one which the master is positively bound to perform in the first instance, he cannot be excused from its performance by intrusting it to another charged with the duty to make performance for him, but who neglects to discharge that duty. (2) If the master furnishes his employee with adequate machinery, means, and appliances, and a safe place for the performance of his work, exercises reasonable care in keeping them in order and proper repair, and provides competent fellow-servants, then the master is not responsible to one servant for the negligence of another servant in the management and use of the machinery and appliances furnished for performing his work. (3) If, then, one servant shall be injured through the negligence of a fellow-servant while at work in the line of his employment, this is considered a risk incident to the employment, and the master is not liable. Many illustrations of the application of these principles of law are furnished by the decisions. The following are some of the decisions by this court bearing on these propositions of law, which may be cited in this connection: *McDonough v. Great Northern R. Co.,* 15 Wash. 244, 46 Pac. 334; *Johnson v. Bellingham Bay Imp. Co.,* 13 Wash. 455, 43 Pac. 370; *Allend v. Spokane Falls & N. R. Co.,* 21 Wash. 324, 58 Pac. 244; *Shannon v. Consolidated etc. Mining Co.,* 24 Wash. 119, 64 Pac. 169; *Hammarberg v. St. Paul etc. Lumber Co.,* 19 Wash. 537, 53 Pac. 727; *Towle v. Stimson Mill Co.,* 33 Wash. 305, 74 Pac. 471.

The question for the consideration of this court is, how do these principles of law affect the main issue raised

upon this record? The counsel for appellant contend that the case at bar falls within the reason of the rule announced in *Johnson v. Bellingham Bay Imp. Co., supra.* We fail to discover the analogy. This court there held that the master was liable to the servant for injuries sustained by reason of the breaking of a rotten plank in the master's wharf, over which the servant was required to wheel heavy trucks. It appeared that the master had knowledge of such defect two days prior to the accident. The record in the present controversy fails to disclose that respondent, Thomas the foreman, Kiehl the fellow-carpenter with appellant, or Van Bergen the helper, before or at the time of the accident, knew of the condition of the plank in question which caused the injuries for which appellant seeks to recover damages in this action.

The appellant argues that, inasmuch as the foreman, Thomas, had directed Kiehl to go and build the scaffold, the latter was not, while engaged in the work of construction, a fellow-servant, but a vice-principal. We have carefully examined the authorities cited by appellant in support of such contention, and, after making an extended research with reference to the rules of law applicable to the facts of this controversy, we are impelled to the conclusion that appellant's position in this respect is untenable.

His counsel urge that the case of *Kansas City Car etc. Co. v. Sawyer,* 59 Kan. 778, 53 Pac. 91, is substantially on all fours with the case at bar. The decision in that case was by an intermediate appellate court in the state of Kansas. Plaintiff, Sawyer, while in the employ of the Car & Foundry Company as a carpenter, was injured by the falling of a scaffold on which he was working. One Girard, the carpenter foreman, ordered Sawyer to go to work on such scaffold. The following statement of facts appears in the body of the opinion of the court:

"The immediate crew with which Sawyer was working consisted of himself, Arnett, Warnick, and Williams, all carpenters, and Charles Chase, a laborer. The scaffold consisted of braces, brackets, and planks. It does not appear when or where the brackets were constructed. There is some evidence tending to show that they were shipped from Birmingham, Mo. The braces for the scaffold were taken from a pile of culled lumber, oak and maple, near the work, some of which was suitable for braces and some not. The defect in the construction of the scaffold was a weak, cracked, knotty, cross-grained brace, which was insufficient to hold up the burden that was necessarily placed upon it.

"It appears that, two or three days before the accident occurred, Chase, at the request of Girard, went to this pile of lumber and selected other timbers to put in the place of the old braces then in use, and that he made the selection of the brace which broke. Chase did not look to see whether the timbers selected by him for braces were cracked, cross-grained, or knotty; however, he did see cracks in the timber that broke. The scaffold was constructed under the direction of Girard, the foreman, in such manner that it could be easily taken apart, removed, and joined together. Sawyer certainly had nothing to do with constructing the brackets, selecting the plank, or selecting timbers for braces; these were all under the direction of the foreman. The scaffold was constructed and a portion of it, at least, was in place when Sawyer was directed to that place for work on the morning of the 13th. Some of the men who constructed the scaffold testified that it was sufficient to hold two persons, but was not intended to hold the weight which was afterwards placed upon it. The laborer who selected the timbers for braces was certainly not the most competent person for that purpose. He did not examine the lumber for the purpose of ascertaining whether it was straight or cross-grained, or whether it had knots or cracks; and yet, when some of these defects were discovered, he selected it and permitted it to be used without making known the defects discovered. . . . Nei-

ther Sawyer nor his colaborers selected the defective timber. It was selected by Chase at the request of the company's foreman."

The court held that the company was liable. We discover nothing in that case to distinguish it in principle from any of the authorities above cited from this court—particularly the case of *Johnson v. Bellingham Bay Imp. Co., supra.* In the action at bar, had foreman Thomas directed Kiehl and Van Bergen to construct the scaffold in question out of culled material, evidently defective for the purpose, and appellant, without negligence on his part, had suffered the injuries of which he now complains, a different case altogether would have been presented. But, in the present controversy, the record shows that there was plenty of good material out of which this scaffold could have been built; that the defect in this particular plank was discovered by neither Kiehl nor Van Bergen, because they were looking for knots and not for saw cuts in the planks to be used for the floor of this staging. Though appellant Metzler took no part in the building of this particular scaffold, yet it is significant in this connection, that, according to appellant's testimony, it was customary for carpenters to erect staging for themselves upon which to work as buildings progressed, and that this practice was pursued with reference to the building in question by the carpenters at work thereon.

The case of *Arkerson v. Dennison,* 117 Mass. 407, and other authorities cited by appellant, affirm the general doctrine that, where the master undertakes to construct a scaffold, or have staging built under his direct supervision, he is liable for any defect or insufficiency in the structure which due care on his part would have prevented or made good; or, if the master has or retains

charge of the work himself, he is guilty of negligence if defective appliances are furnished, or the structure is built in an unsafe manner, though he had employed suitable and competent men to do the work.

In the case of *Cadden v. American Steel Barge Company,* 88 Wis. 409, 60˙N. W. 800, the plaintiff, Cadden, a riveter, was injured while working on a "whaleback" ship by reason of the improper and dangerous manner in which the scaffold had been suspended and adjusted for the employee to work upon. The scaffold had been supplied and adjusted by men employed by defendant specially for that purpose. The court decided that the scaffold builders were not fellow-servants with plaintiff, and that the barge company was liable in damages to plaintiff for injuries sustained. See further, *Sims v. American Steel Barge Co.,* 56 Minn. 68, 57 N. W. 322.

The following authorities affirm the proposition of law, that where the master retains no supervision over the erection of the staging, and gives no directions in regard to it, but provides suitable materials therefor, and intrusts the duty of its construction to skillful workmen, he is not liable to one of the workmen for injuries resulting from the falling of the staging, though insufficiently built. *Ross v. Walker,* 139 Pa. St. 42, 21 Atl. 157; *Burns v. Sennett,* 99 Cal. 363, 33 Pac. 916; *Kelley v. Norcross,* 121 Mass. 508; *Colton v. Richards,* 123 Mass. 484; *Killea v. Faxon,* 125 Mass. 485; *McCone v. Gallagher,* 44 N. Y. Supp. 697.

In these cases last cited, an important distinction is made as to the doctrine of "common employment," involving the liability and nonliability of master to the servant in given instances. The court in *Fraser v. Red River Lumber Co.,* 45 Minn. 237, 47 N. W. 785, enunciates this distinction in forcible language:

"An important consideration, often overlooked, is whether the structure, appliance, or instrumentality is one which has been furnished for the work in which the servants are to be engaged, or whether the furnishing and preparation of it is itself part of the work which they are employed to perform. If it be the latter, then, as is well settled by our decisions, the master is not liable. It is also well settled that the application of this proposition is not limited to cases where the servants are engaged in the same department of the common service."

In the case at bar, the respondent through his foreman, Thomas, furnished suitable and adequate materials and competent coservants. He did not undertake to furnish the scaffolding, on which appellant stood when injured, in an adjusted condition. It was usual and customary for the employees, including appellant, while at work on this structure, to construct and adjust staging out of the materials provided by respondent. It is illogical to compare such temporary staging with some machine which is all adjusted, so that its sufficiency can be ascertained before the employee is called upon to use it. We think that the action at bar falls within the rule announced in the above authorities, that, where competent men are employed to do some work on a structure upon which scaffolding, or some other appliance to support the workmen, is required—"the employer to furnish the materials, and the employed to construct or adjust the scaffolding or other appliance—the employer is not liable to one of the employees for the careless act of another employee done in the construction, adjustment, or maintenance of the structure or appliance." McFarland, J., in *Burns v. Sennett, supra.*

Therefore the conclusion is reached that the judgment of the superior court is right, and must be affirmed.