[No. 7355.   Decided October 3, 1908.]

WILLIAM M. CHEATHAM, *Appellant*, v. FRANK P. HOGAN
*et al., Respondents.*[1]

MASTER AND SERVANT—SAFE PLACE—DEFECTIVE SCAFFOLD—FELLOW SERVANTS. Where plaintiff, a common laborer, assisted carpenters in the construction of a scaffold, by passing material to them, without any voice in its selection or the manner of construction, and after it has served its purpose, the master directed the plaintiff to go upon the scaffold for the purpose of removing it, the master adopts and guarantees the same as a safe place to work, and is liable for an injury sustained by reason of negligent or improper construction; as the carpenters are not fellow servants as to the plaintiff.

[1]Reported in 97 Pac. 499.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered December 26, 1907, upon granting a nonsuit, after a trial before the court and a jury, in an action for personal injuries sustained by an employee in the fall of a scaffold. Reversed.

*Hand & Wright, Geo. A. Latimer,* and *Fred Miller,* for appellant.

*Belt & Powell* and *Graves, Kizer & Graves,* for respondents.

FULLERTON, J.—The respondents, in 1906 and 1907, constructed a five-story brick building in the city of Spokane, on property owned by them. E. J. Cheatham was the general superintendent of the work, and directed the construction work generally. One Ridpath, a carpenter, was the carpenters' foreman, and laid out and directed the carpenter work. The appellant was a brother of the superintendent, and was employed about the building as a common laborer; it being his duty to do any sort of work he might be directed to do. The building was constructed with a light well near its center, approximately 15x45 in size, extending from the second floor to the roof. In the course of the construction of the building, it became necessary to construct a scaffold in the light well on which the workmen might stand while completing that part of the building. When this scaffold was first mentioned, Mr. Cheatham the superintendent suggested a swinging scaffold, but Hagan, one of the owners who was present, thought one built in the well would be better. The superintendent thereupon directed two carpenters to build it, telling them what kind of material to use and how to construct it, but giving them no further directions.

The carpenters built the scaffold as directed, the appellant assisting them in his capacity as a common laborer by passing boards to them as they were needed. He did not, however, have a voice either in the selection of the material or in the manner in which the scaffold was built. As built, the

leger boards, or cross-pieces which supported the planking on which the workmen stood while performing their work, were nailed to posts which formed a part of the framework of the building, having no independent supports of their own.

Later on, owing to a change in the manner of finishing the light well, it was found necessary to detach these leger boards from the posts and support them by framework built up from the bottom of the well. Foreman Ridpath directed the change to be made. The carpenters ordered to reconstruct it selected from the material on hand such as they thought necessary for that purpose, and completed the change. Ridpath was around the work occasionally, but took no active part in it, nor did he select the material. The carpenters used for uprights boards 2x4 inches in size, and 16 feet in length; these they spliced together by nailing, and to these were nailed the leger boards which supported the planking on which the workmen using the scaffolding stood. The scaffold stood sometime after this, and was used by different sets of workmen engaged in completing the building. After it had fulfilled its purpose, the superintendent directed the appellant and others to take it down. The appellant got upon the scaffold for that purpose, when it fell, throwing him to the floor below and severely injuring him.

The falling of the scaffold was caused by the breaking of an upright near the floor on which it rested. The evidence tended to show that the upright which broke and caused the fall of the scaffold was defective, having a knot in it which reduced its strength. Also that the scaffold itself was defectively constructed in that a sufficient number of uprights were not used, and it was not properly braced so as to prevent its rocking and swaying when weight was put upon it and moved about. This action was brought by the appellant to recover for his injuries. On the foregoing facts appearing, he was nonsuited by the court, and judgment of dismissal and for costs entered against him. From the judgment he appeals.

The trial judge granted the nonsuit on the authority of the case of *Metzler v. McKenzie*, 34 Wash. 470, 76 Pac. 114. From the facts recited by the court in that case, it appears that the appellant was engaged with other carpenters in constructing a building, and that, in the course of the work, it became necessary to build a scaffold on which the carpenters could stand while nailing certain bridging to the rafters. The foreman came to the place where the appellant and other carpenters were at work, and gave them directions for their further work, directing a couple of them, without naming any one, to go and build a scaffold and finish nailing the bridging. One of the carpenters went away for that purpose and, together with another, erected the scaffold. In erecting it they unwittingly used a board which had been partially sawed into without discovering the saw cut. The appellant shortly after went to work on the scaffold and stepped onto the unsafe board, which broke under his weight and threw him to the floor below and injured him. The court held that he could not recover because the negligence causing his injury was the negligence of a fellow servant; that the master, since he had furnished the servants with necessary and suitable material to make their working place safe, did not owe to them the duty of inspecting it after they had completed it to see that it was sufficiently built.

But while this case decides the law correctly on the facts shown, we think it has no bearing on a case like the one at bar. The rule undoubtedly is that a master who retains no supervision over the erection of a scaffold, and gives no direction in regard to it further than to direct that it be constructed, and provides suitable materials for its construction and intrusts the duty to skillful workmen, is not liable to one of the workmen who is injured by the falling of the scaffold because of insufficient construction—this, on the principle that the master is not responsible to the workmen who construct the scaffold, nor to one who is engaged in a common

employment with them in such a way as to be regarded as their fellow servant, for the sufficiency of their own work. But the rule has no application to a servant who did not construct the scaffold and who is not a fellow servant of the servant who did construct it. When one servant of a master constructs a scaffold for a particular purpose of the master, uses it for that purpose and then leaves it standing, and the master afterwards directs another servant, who had no part in its construction, to use it for another purpose, the master adopts the scaffold as his own, and thereby guarantees that it is a safe place on which to work. *Liedke v. Moran Brothers Co.*, 43 Wash. 428, 86 Pac. 646; *McBeath v. Rawle*, 93 Ill. App. 212; *McBeath v. Rawle*, 192 Ill. 626, 61 N. E. 847, 69 L. R. A. 697; *Stevens v. Howe*, 28 Neb. 547, 44 N. W. 865.

The facts of this case bring the appellant within the latter rule, rather than within the rule of the *Metzler* case. He had no part in the reconstruction of the scaffold, nor was it constructed by his fellow servants for his use. As to him, it was an independent structure, and when the master directed him to go to work upon it, he had the right to rely upon the assurance implied from the direction that it was a safe place in which to work.

We think the evidence offered by the appellant made a case for the jury, and that the court erred in granting a nonsuit. The judgment is reversed and remanded for a new trial.

RUDKIN, CROW, and DUNBAR, JJ., concur.

HADLEY, C. J., and MOUNT, J., took no part.