[No. 8358. Department Two. May 13, 1910.]

CHARLES H. MUEHLMAN, *Appellant*, v. SPOKANE & INLAND EMPIRE RAILROAD COMPANY, *Respondent*.[1]

APPEAL—REVIEW—VERDICT. A special finding of the jury contrary to undisputed evidence and unsupported by any testimony must be disregarded.

MASTER AND SERVANT—FELLOW SERVANTS—SAFE PLACE—DEFECTIVE SCAFFOLD. Where it was customary for carpenters to construct such scaffolding as they and their co-employees needed in the progress of the work, and the master retained no supervision over the construction, and furnished suitable material and employed skillful workmen to put it up, the master is not liable to a fellow carpenter who was not present when the scaffold was erected, but who joined the crew later and fell by reason of insufficient material used in its construction; since the negligence was that of fellow servants.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered December 7, 1908, in favor of the defendant notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee by falling from a scaffold. Affirmed.

*Robertson, Miller & Rosenhaupt*, for appellant.

*Graves, Kizer & Graves*, for respondent.

CROW, J.—This action was commenced by Charles H. Muehlman against the Spokane & Inland Empire Railroad

[1]Reported in 108 Pac. 764.

Company, to recover damages for personal injuries. A verdict was returned in his favor, but thereafter the defendant's motion for judgment *non obstante veredicto* was sustained and the action was dismissed. The plaintiff has appealed.

The sole question presented for our consideration is whether the trial court erred in sustaining the motion. The respondent railroad company was erecting depots at stations along its line of road, and one P. L. Peterson was in general charge of the work. The appellant, a carpenter, was injured at Waverly, where a new depot was being erected. Experienced carpenters employed by Peterson were doing the work, during the progress of which it became necessary to construct a scaffold for their use. Thereupon the foreman directed them to erect the scaffold, but gave no further instructions. Suitable material was on the ground. The carpenters, without supervision of appellant or its foreman, selected such material as they needed, and built the scaffold according to their own plans. Thereafter they used the scaffold for about one week. During this period appellant and another carpenter had been left at Spring Valley, one of respondent's stations, to complete work on another depot. On August 29, 1907, they reported at Waverly to work with the carpenters on the depot there. Appellant was set to work upon the scaffold with the other carpenters, and while so engaged a plank and cross-piece broke, causing him to fall. He contends that the scaffold was not properly constructed; that it was of insufficient strength; that improper material had been used; that the respondent was negligent in failing to furnish him a safe place to work or a safe scaffold on which to work, and that by reason thereof he was injured without any negligence upon his own part. The jury answered a number of interrogatories, and appellant relies upon the following answers:

"(1)   Q. Did the defendant have at its railway depot at Waverly sufficient and proper material for the erection of such a scaffold as was necessary for the construction of the build-

ing? A. No. (2) Q. Did the defendant intrust the erec-
tion of the scaffold to competent carpenters? A. No."

There is no evidence to sustain these findings. Four or five
disinterested witnesses testified that the respondent did have
an abundance of suitable material at its depot at Waverly for
use in the erection of a proper scaffold; that the material
actually used was selected by the carpenters who built the
scaffold; that one McNulty and one Johnston, experienced
carpenters, built that portion from which the appellant fell,
and that one of them selected the particular plank and cross-
piece which broke and caused appellant's fall, although it
did not distinctly appear which one did so. The evidence
further shows that respondent did intrust the erection of the
scaffold to competent, experienced carpenters, who built it
for the use of themselves and of other carpenters engaged in
building the depot. None of this evidence is disputed. Ap-
pellant made no attempt to meet it. The witnesses who tes-
tified to these facts were neither parties to nor interested in
this action, and there was no other evidence on the subject.
The findings above quoted being unsupported must be dis-
regarded.

Answering a further interrogatory, the jury found, and
the evidence shows, that the respondent did not exercise any
supervision over the erection of the scaffold, or give any
instruction in regard to it other than to direct that it be
constructed. Ascribing the utmost value to appellant's evi-
dence, it appears that the falling of the scaffold was caused
by the carelessness or bad judgment of the carpenters in
selecting and using unsafe material in its construction, al-
though respondent had provided an abundance of proper,
safe, and sound material. In support of its motion for
judgment the respondent cited, and the trial court followed,
*Metzler v. McKenzie*, 34 Wash. 470, 76 Pac. 114. In every
essential particular that case and this one are identical. In
each it appeared that the plaintiff had no part in building
the scaffold; that it was customary for the carpenters en-

gaged in the erection of the building to construct for use such scaffold as they might need in the progress of the work, and to do so without any direction as to details by the foreman; that the master, through the foreman, retained no supervision over the erection of the scaffold, and gave no directions with reference thereto; that the master furnished on the ground a sufficient quantity of suitable material for its erection which he intrusted to competent, experienced, and skillful workmen, and that the only negligence, if any, which caused the injury, was that of the workmen in selecting and using improper material. In the *Metzler* case we said:

"Where the master retains no supervision over the erection of the staging, and gives no directions in regard to it, but provides suitable materials therefor, and intrusts the duty of its construction to skillful workmen he is not liable to one of the workmen for injuries resulting from the falling of the staging, though insufficiently built. . . . The respondent through his foreman, Thomas, furnished suitable and adequate materials and competent coservants. He did not undertake to furnish the scaffolding, on which appellant stood when injured, in an adjusted condition. It was usual and customary for the employees, including appellant, while at work on this structure, to construct and adjust staging out of the materials provided by respondent. It is illogical to compare such temporary staging with some machine which is all adjusted, so that its sufficiency can be ascertained before the employee is called upon to use it. We think that the action at bar falls within the rule announced in the above authorities, that, where competent men are employed to do some work on a structure, upon which scaffolding, or some other appliance to support the workmen, is required—'the employer to furnish the materials, and the employed to construct or adjust the scaffolding or other appliance—the employer is not liable to one of the employees for the careless act of another employee done in the construction, adjustment, or maintenance of the structure or appliance.' "

In *Cheatham v. Hogan*, 50 Wash. 465, 97 Pac. 499, 22 L. R. A. (N. S.) 951, the scaffold which had been originally erected by certain employees for their use in finishing a por-

tion of the building was afterwards adopted and used for other purposes by the owner whose foreman directed the plaintiff to go upon it. An examination of the facts involved in the *Cheatham* case will show that they materially differ from those of the *Metzler* case or the one now before us. In the *Cheatham* case, referring to the *Metzler* case, we said:

"But while this case decides the law correctly on the facts shown, we think it has no bearing on a case like the one at bar. The rule undoubtedly is that a master who retains no supervision over the erection of a scaffold, and gives no direction in regard to it further than to direct that it be constructed, and provides suitable materials for its construction and intrusts the duty to skillful workmen, is not liable to one of the workmen who is injured by the falling of the scaffold because of insufficient construction—this, on the principle that the master is not responsible to the workmen who construct the scaffold nor to one who is engaged in a common employment with them in such a way as to be regarded as their fellow servant, for the sufficiency of their own work. But the rule has no application to a servant who did not construct the scaffold and who is not a fellow servant of the servant who did construct it."

The undisputed evidence now before us shows that the appellant, with the carpenters who built the scaffold, was engaged in such a way as to be regarded as their fellow servant, although he, like the plaintiff in the *Metzler* case, was not present when and where the scaffold was built. In *Cleary v. General Contracting Co.*, 53 Wash. 254, 101 Pac. 888, the doctrine of the *Metzler* case was held inapplicable when the injured plaintiff was a subcontractor for whose use the scaffold had been furnished by the defendant corporation, which had agreed, as a part of the contract of employment, to construct and furnish a safe scaffold for the plaintiff's use. There is an utter absence of evidence here showing, or tending to show, any negligence on the part of the respondent in failing to discharge any duty which it owed the appellant.

The judgment is affirmed.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.