[No. 10031. Department Two. February 5, 1912.]

GUSTAF W. SWANSON, *Appellant*, v. SOUND CONSTRUCTION AND ENGINEERING COMPANY, *Respondent*.[1]

MASTER AND SERVANT—FELLOW SERVANTS—TEMPORARY STAGING—DETAILS OF WORK. A carpenter's helper who fell from temporary staging which he was assisting in building, cannot recover of the master for negligence of the carpenters in nailing a support with only one nail near its upper edge and in using cross-grain material, where the plan of construction was a good one and sufficient material was furnished and the carpenters were competent and made their own selection of materials and used their own judgment as to the number of nails required; since the accident was due to the neglect of fellow servants in mere details of the work (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for King county, Prigmore, J., entered June 19, 1911, upon the verdict of a jury rendered in favor of the defendant by direction of the court, dismissing an action for personal injuries sustained by a carpenter's helper in a fall from a scaffold. Affirmed.

*Philip Tindall* and *Jackson Silbaugh*, for appellant.

*Hughes, McMicken, Dovell & Ramsey, Otto B. Rupp*, and *J. B. Joujon-Roche*, for respondent.

MOUNT, J.—This action was brought to recover for personal injuries sustained by reason of the fall of a scaffold on which the plaintiff was working. At the trial the court di-

[1]Reported in 120 Pac. 880.

rected a verdict for the defendant, and dismissed the action. The plaintiff has appealed.

The facts were as follows: The defendant was constructing an engine house for the Great Northern Railway Company. This building was 100 by 104 feet in size. The sidewalls were completed and the roof timbers were to be placed in position. In order to place these roof timbers, it was necessary to erect a temporary stage. One of the carpenters working on the building drew a rough sketch of a plan for the scaffold on a piece of ship lap. Mr. M. A. Brown, the foreman, worked this plan out to scale in the form of a blue print, and directed the scaffold to be built according to that plan. This plan consisted of a series of stages, each seven feet high, rising from the top of the walls of the building, after the manner of steps at each end of the scaffold, and conforming to the shape of the roof. The upright pieces to support this staging were constructed in pairs the width of the scaffold. These pairs of uprights, as they approached the center of the building from each side, were respectively seven, fourteen, twenty-one, and twenty-eight feet in height. Pieces two by eight inches in size, called ledgerboards, were nailed across each pair of uprights at seven-foot intervals from the bottom. The purpose of these ledgerboards was to support the planks upon which the workmen were to stand upon the platform or scaffold. The scaffold thus constructed was designed to be used by the workmen in raising a number of roof timbers into place, and then the scaffold was to be taken down and reconstructed for placing another set of roof timbers, and so on across the building. The foreman, Mr. Brown, directed two carpenters, viz., George Lohse and Pete Smith, to construct the scaffold according to this plan. A sufficient supply of lumber and nails was upon the ground. The plaintiff was a laborer working as a carpenter's helper, and assisted these two carpenters in the construction of the scaffold. The foreman,

Mr. Brown, and Mr. Lohse, a member of the defendant company, were about the work and assisted in raising some of the uprights into place.    Other men were working around the building.    While the plaintiff was assisting in placing the planks for the floor upon the ledgerboards at the twenty-one foot level, a ledgerboard gave way, and he fell that distance and received his injuries.    It appears that the ledgerboard which gave way had only one nail to hold it to the upright. This nail was near the top of the board.    This board split at the point where the nail was driven, and caused plaintiff to fall.    It is not shown that the board was split when the nail was driven.    It is very probable that, when the weight of the floor and the weight of the man came together upon the board, it gave way.

There is no claim made that the plan or design of the scaffold was insufficient or defective, or that the carpenters who did the work were not skillful; but it is claimed by the appellant that, because the defendant, through its foreman, furnished the design and directed the scaffold to be constructed according to the design, and supervised the workmen and at times assisted in the construction, the defendant is liable under the rule in *Ralph v. American Bridge Co.*, 30 Wash. 500, 70 Pac. 1098; *Liedke v. Moran Bros. Co.*, 43 Wash. 428, 86 Pac. 646, 117 Am. St. 1058; *Cheatham v. Hogan*, 50 Wash. 465, 97 Pac. 499, 22 L. R. A. (N. S.) 451, and *Cleary v. General Contracting Co.*, 53 Wash. 254, 101 Pac. 888.    In each of these cases the scaffold, or other agency which caused the injury, was a completed appliance which the servant had not constructed, and he therefore did not know of its weakness and did not know and was not warned of any defects.    In *Ralph v. American Bridge Co.*, *supra*, we said:

"The present case may be distinguished from a class of cases which have frequently arisen where temporary staging is used by workmen as a part of the details of their ordinary work and erected from time to time by themselves.    The ma-

son or carpenter who, in common with his fellows in the same occupation, erects scaffolding, or carries a ladder for such use, which he furnished himself, assumes the risk of his work in the safety of such scaffold or ladder."

This distinction is obvious. It is clear that the scaffold in this case was one being constructed by the workmen in the details of their ordinary work. It is true that the plan was furnished by the foreman of the defendant company, but the plan appears to have been a general plan and the details of the construction, such as the number of nails and character of the materials to be used, were not gone into; and there is nothing in the evidence to show that the carpenters who were set to the construction of the scaffold were directed to place a given number of nails in the cross-pieces or ledgerboards which were to support the floor of the scaffold. These men were permitted to use their own judgment in such matters. And it does not appear that the carpenters or their helper, the plaintiff, were directed to select cross-grain material. They were evidently to make their own selection of materials, which was of good quality and abundantly furnished. It is also true that defendant's foreman was about the work and to some extent directed it, but it is not shown that he knew how many nails were used in each place by the carpenters. This also was left to the judgment of the carpenters, who were skillful men and presumed to know what was required.

The negligence alleged by the complaint is to the effect that the ledger gave way by reason of the fact that it "was nailed to the upright with only one nail, which nail was driven through said ledger near its upper edge; and to the fact that said ledger consisted of cross-grain material." It is apparent that the plan of construction had nothing to do with the accident. The plan was a good one and is not questioned. If the men who did the work had performed their duty and selected and used proper material and sufficient nails, which were at hand, the structure would have been ample. The actual cause of the accident was the failure of these men in a

detail of the work to use a sufficient number of nails.   As said above, the plaintiff was a helper and worked with the men who did this work.   This cause is clearly governed by the rule in *Metzler v. McKenzie*, 34 Wash. 470, 76 Pac. 114.   In that case we said:

"In the case at bar, the respondent through his foreman, Thomas, furnished suitable and adequate materials and competent coservants.   He did not undertake to furnish the scaffolding, on which appellant stood when injured, in an adjusted condition.   It was usual and customary for the employees, including appellant, while at work on this structure, to construct and adjust staging out of the materials provided by respondent.   It is illogical to compare such temporary staging with some machine which is all adjusted, so that its sufficiency can be ascertained before the employee is called upon to use it.   We think the action at bar falls within the rule announced in the above authorities, that, where competent men are employed to do some work on a structure upon which scaffolding, or some other appliance to support the workman, is required—'the employer to furnish the materials, and the employed to construct or adjust the scaffolding or other appliances—the employer is not liable to one of the employees for the careless act of another employee done in the construction, adjustment, or maintenance of the structure or appliance.' "

See, also, *Muehlman v. Spokane & Inland Empire R. Co.*, 58 Wash. 327, 108 Pac. 764.

It was not the duty of the master to stand over each man doing work on the scaffold and direct him how many nails he should drive in each place, or to inspect each piece of timber used.   These were details of the work which the master might reasonably leave to a competent workman.   In order to reverse this case, it would be necessary to hold that the defendant was negligent in not directing every detail of the work. This is not the rule.

The judgment must therefore be affirmed.

DUNBAR, C. J., MORRIS, and ELLIS, JJ., concur.

FULLERTON, J., dissents.