THOMAS ENRIGHT, PLAINTIFF IN ERROR, v. OLIVER & BURR, A CORPORATION, DEFENDANT IN ERROR.

Argued March 13, 1903—Decided June 15, 1903.

1. As a general rule, employes of a common master, who are engaged in the common employment of erecting a building or other structure, are all fellow-servants; and the rule is not altered because such employes may be engaged in different departments of the common business. In their contract of hiring they assume the risk of each other's negligence, and cannot look to the master for damages for an injury resulting therefrom.

2. This rule extends also to a foreman in charge of such employes, who is a fellow-servant with them, while giving directions with regard to, or assisting them in the performance of, the duties of the common employment. And the master is not liable to the employe for injuries arising out of the negligence of such foreman, except when his acts relate to the personal duties which the master owes to the servant, and from which he cannot escape responsibility by delegating them to another.

3. It is one of the personal duties of the master to exercise reasonable care to furnish safe appliances to the employe for use while engaged in such work; but where the master furnishes proper and sufficient materials, and the employe, as a part of his work, undertakes the construction, of such appliances, but the employe, by negligence, in putting the materials together or in selecting them, constructs an unsafe appliance, which results in injury to another, the master is not liable.

4. Where an employe seeks to hold the master liable for an injury growing out of the negligence of a fellow-servant, and it appears that such negligence resulted from the incompetent acts of such fellow-servant, for which the master would ordinarily be held responsible, if it further appears that the conditions created by such incompetency, and which would expose the employe to increased danger, and from which the accident arose which caused the injury, were known to such injured employe, or should have been known to him by the exercise of due care, and yet, without giving notice thereof to the master or seeking to remedy such conditions, continues in the employment, and thereby suffers the injury, he will be held to have assumed the risk as an obvious one, and cannot recover.

---

On error to the Supreme Court.

For the plaintiff in error, *Warren Dixon.*

For the defendant in error, *Bedle, Edwards & Lawrence.*

The opinion of the court was delivered by

HENDRICKSON, J. The plaintiff, who is a carpenter, was engaged with other carpenters and with laborers in constructing center panels within the spaces made by the iron cross beams of a large refrigerator building in Jersey City, then in course of erection, which were for the temporary support of a concrete floor then being laid in the several stories of the building. The work had progressed until the fourth floor had been reached, and the plaintiff, while engaged in nailing

the corners of a center panel, and in nailing and fitting to-
gether the sheathing-boards that had been laid down thereon,
a defective support gave way under his weight, so that he fell
through the sheathing to the floor below and sustained in-
juries thereby for which he brought suit against his employer,
the defendant corporation.

The gravamen of the action was negligence in failing to
provide proper support to the floor or sheathing upon which
the plaintiff was working, and in failing to provide competent
and skillful employes to lay and construct such flooring and
in failing to properly inspect and maintain the same in a
reasonably safe and sound condition while the plaintiff was
working thereon in discharge of his duties.

At the close of the plaintiff's evidence at the trial motion
was made for a nonsuit, upon the ground, among others, that
the accident was the result of the negligence of a fellow-serv-
ant. The learned trial judge ordered a nonsuit, observing
that the case was either within the principle of *Curley* v.
*Hough,* 33 *Vroom* 759, or within that of *Saunders* v. *Eastern
Hydraulic Co.,* 34 *Id.* 554. We have not stopped to deter-
mine as to the applicancy of these cases, for we can more ap-
propriately, we think, invoke in support of the nonsuit the
doctrine of fellow-servant. It is contended for the plaintiff
that the defendant failed in his duty to use reasonable care
to provide for him a reasonably safe place in which to work.
But this duty of the master does not apply where the place
of work is one that the servants themselves undertake to erect
and provide as one of the duties and undertakings of their
common employment. In such a case, if any injury occurs
to an employe by reason of negligent construction, caused
by the carelessness of a co-employe, the master is not liable.
This principle is clearly laid down by the Supreme Court in
*Maher* v. *McGrath,* 29 *Id.* 469, and in this court in *Olsen* v.
*Nixon,* 32 *Id.* 671. The only liability that could fall upon
the master in such case would be for negligence in the selec-
tion of the workmen. And the general rule is also well estab-
lished that employes of a common master, who are engaged
in the common employment of erecting the same structure,

are all fellow-servants.  12 *Am. & Eng. Encycl. L.* 1015, and *note 2,* where cases are cited.   The same principle is recognized in *Maher* v. *McGrath, ubi supra,* where the plaintiff was a laborer, who sued the master for injuries received from the fall of ~a scaffold while attending upon masons engaged in constructing the walls of a brick building.   One of the questions to be considered in this case is, was the plaintiff injured through the fault of a co-servant and not through the fault of the master.   Some further statement of the facts may be helpful.   The panel referred to as to form of construction is aptly described in the case as being like a box without top or bottom.   It was about twenty feet by about six feet in dimensions and had a depth of eighteen inches.   It rested upon hangers secured upon the beams.   Upon the sides of the panel were also hangers or clips in which were laid putlogs, spoken of in the case as putlocks or footlocks, across the panel, upon which the sheathing was laid.   The putlogs were five in number, and the sheathing was in two sections.   In one section the boards were about fifteen feet in length and were met by the boards in the adjoining section, having a length of about five or six feet.   The boards of the two sections were made so as to meet upon the fourth putlog.   It is assumed that this putlog, by reason of the junction thereon of the two sections of the sheathing, would naturally be subjected to the greater weight or strain from any encumbrance put upon it.   The putlogs were out of three by four-inch timber, thirteen feet long, and in order to make three putlogs out of one piece of timber, the third one in some cases had to be cut an inch short.   To supply this deficiency in length furring strips of the required dimensions were nailed at the end with three or four nails.   In placing the putlogs into the hangers or clips it was found that one out of the five was a short one that had been pieced; and that was the fourth in order upon which the two sections of the sheathing met.   It was found after the accident that it was this fourth putlog which gave way under the plaintiff's weight, and while the putlog proper fell below, the furring strip had split off and was found in the hanger.   It is contended by the plaintiff that

the master was negligent in furnishing imperfect and defective putlogs, and was also negligent in employing unskillful workmen in the persons of ordinary laborers, who were attending upon the carpenters, to lay them down, whereby the defective putlog was placed in such a position as to cause the accident to the plaintiff, which otherwise would not have been at all likely to occur. And, first, as to the alleged negligence of the master in furnishing some putlogs which were pieced at the end and alleged to be thereby rendered defective. The putlogs were being made by some of the carpenters at work on the job. They had cut a number of them an inch short, in the way before stated, piecing them at the end, under the direction of the foreman, and then the president of the defendant company came along and stopped the cutting of any more short putlogs, and thereafter the practice was abandoned. The short putlogs continued to be used, but as fast as the concrete flooring laid upon the sheathing was set the temporary construction underneath was withdrawn and the lumber that remained fit was used again in other centers, so that as the case shows, there were plenty of putlogs for use, and a sufficient number at all times of the putlogs that were not pieced to select from without using the imperfect ones.

These putlogs were selected by one or more of the carpenters, of whom there were at least six at work at the time of the accident, and they were carried by the laborers, as were the boards and other materials used, and placed alongside the panel for which they were intended. Now, regarding the putlog as an appliance which it was the duty of the master to furnish that would be reasonably safe for the purpose designed—a duty that could not be delegated—still it is well settled that, where the master has furnished a sufficiency of safe appliances to select from, the master is not liable for an injury to an employe arising from the selection by a co-servant of an imperfect appliance not furnished by the master for the purpose. This principle was laid down by this court in *Maher* v. *Thropp, 30 Vroom* 186, and in *Guggenheim Smelting Co.* v. *Flanigan, 33 Id.* 354. As before shown, the corporation had, by its president, plainly con-

demned the use of the pieced putlog, by directing the carpenters in charge of that work, and upon whom the duty of selection rested, to stop cutting and piecing putlogs in that way.

But, upon another principle, the master cannot be held to be negligent because there were imperfect putlogs upon the premises that might be brought into use. This was an appliance which the carpenters were to prepare, and did prepare, out of materials furnished by the master, in the course of their general work. It is not disputed but that the material furnished for the putlogs was of the proper quality and was sufficient in quantity. It therefore follows, upon the principle already stated, that any injury to a co-employe, by reason of faulty construction, does not fall upon the master. *Maher* v. *McGrath, ubi supra.* The fact that they acted under the direction of the foreman in charge of the men in doing what they did does not affect the question of liability. The foreman was, under the circumstances, a fellow-servant with the other employes engaged in the common employment.

The rule upon this subject is correctly laid down by the Supreme Court in *O'Brien* v. *American Dredging Co.,* 24 *Vroom* 291. The decision has been approved by this court in *Maher* v. *Thropp* and *Olsen* v. *Nixon, ubi supra.* This rule was again very fully discussed and approved by the Court of Errors and Appeals in the recent case of Knutter *v.* New York and New Jersey Telephone Co. But, perhaps, the better and more complete answer to the alleged ground of liability on the part of the defendant, by reason of its alleged negligence in connection with the cutting, making and use of the imperfect putlog, may be found in this: That it plainly appears that such negligence, if any, was not the proximate cause of the injury. It was proven by one of the carpenters, who was the plaintiff's witness, that he had been a carpenter for fifty years; that he was employed upon this work, and, under instructions from the foreman, he cut and prepared putlogs and was so engaged when stopped by the president; that they were pieced in a proper way; that this was often done, but they did it for the prevention of

lateral motion, not for bearing; that the bearing of the short putlog would be one inch without the furring strip; that the pieces were nailed on with eight-penny nails; that they used three or four nails in each piece, which together would stand a strain of eight or nine hundred pounds. This was not contradicted, and there was no evidence tending to show that the pieced putlogs were not reasonably safe for use in any other of the places designated for the putlogs, except the fourth place, where the boards of the two sections of the sheathing joined. It was the improper placing of the one pieced putlog at the point where there would be the greatest strain in the whole panel that was, as it seems to us, the proximate cause of the accident.

This being the situation, the only question remaining is, was the faulty arrangement of the putlogs a breach of any duty that belonged to the master, or was it the fault of a fellow-servant or of the plaintiff himself. The evidence does not show that the master was present or participating in any way in the construction and sheathing of the panels. Under the principles already stated, he had furnished the proper and necessary materials for this work that was in charge of the carpenters and laborers, under the direction of the foreman. He owed them no duty thereafter in the conduct of this work. The only liability that could attach to him for an injury to an employe so engaged would be where it arose from his failure to exercise reasonable care in the employment of a co-servant, whose negligence caused the injury. And this is the chief, if not the only, point of attack by the plaintiff in this part of the case. His contention is that the ordinary laborers were directed or permitted to, not only carry the putlogs to the panel in question, but to lay them down in the clips—a duty which belonged to the carpenters, and for which the laborers were incompetent; that, if they had known how to do their work and had been properly instructed, the accident, in all probability, would not have happened. It will be perceived that it is not claimed that the master employed incompetent men, having regard to the particular work required of them, but rather that the ordi-

nary laborers, employed as attendants to wait upon the carpenters, were ordered to do certain acts which, it is alleged, they were not qualified to perform. The laying down of the putlogs was only the work of a helper, whose duty it was, also, to lay down the boards loosely upon the putlogs, preparatory to the work of the carpenters, whose duty it was to adjust, secure and complete the structure, for which all the appliances and materials had been prepared by them. As before stated, it was the duty of the carpenters to select the putlogs to be carried to the panel, and the case shows that, when the sides of the panel were in place and the putlogs and sheathing boards were laid down, the carpenters proceeded to nail the sides and ends together, to arrange the putlogs so that the fourth should be in place so that the sheathing boards would properly meet upon it. The loose boards upon both sections had to be adjusted, made tight and nailed, so as to prevent any leakage of the concrete. The case shows, and it is apparent from the situation, that, in performing the details of the work thus outlined, the carpenters must have seen the putlogs and the clips containing them. And it was clearly their duty to see that the putlogs were in good condition, suitable in character and properly placed to give the support intended.

But even conceding that the conditions of danger which precipitated the plaintiff's injury grew out of negligence of the co-servant, as the result of his incompetency, since it plainly appears that these conditions were known to the plaintiff, or should have been known to him by the exercise of ordinary care before exposing himself to the danger complained of, and yet that, without notice thereof to the master or seeking in any way to remedy these conditions, he continued in the employment which resulted in the injury, he must be held to have assumed the risk as an obvious one, and cannot recover. The principle involved in the proposition is so well established that the citation of authorities will be unnecessary.

An effort has been made by the plaintiff to escape this result of his own negligence and that of his co-servants upon

the ground that though he was engaged, at the time of his injury, in doing this detail work on or about the panel on the ground, that he did not know of the pieced putlogs, and had no knowledge as to who were employed to lay down the putlogs—a work that, some time before the accident, was performed by the carpenters. But the rule which governs, under such circumstances, is this: That servants employed by or under the control of the same master, in a common employment obviously exposing them to injury from the negligence of others so employed or controlled, although engaged in different departments of the common business, are fellow-servants, who assume the risk of each other's negligence, and cannot have recourse to the master for any injury resulting therefrom. *O'Brien* v. *American Dredging Co., ubi supra.* We think the plaintiff failed to show any actionable negligence of the defendant as causing the injury complained of, and therefore the judgment of nonsuit must be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 13.

*For reversal*—None.