HOVELAND, Appellant, vs. NATIONAL BLOWER WORKS and another, Respondents.

*December 14, 1907—January 28, 1908.*

*Master and servant: Negligence: Injuries to servant: Fellow-servants: Servants of different masters in the same work: Scaffolding: Duty of master: Selection of material for scaffold: Contributory negligence: Trial: Questions for jury.*

1. Where a manufacturer contracted with a lumber company to install a shaving and sawdust blower, both parties co-operating in the construction of a necessary scaffold, the manufacturer assuming charge of the work through its foreman and certain servants of the lumber company sent by it to assist in the construction, but under the direction and control, for the time being, of the manufacturer, both are *held* to have furnished the material wherewith to construct the scaffold.

2. Grounds for a nonsuit—that plaintiff was a fellow-servant; that he was guilty of contributory negligence—are distinct and dissimilar in law.

3. In an action by a servant for injuries received, the evidence, stated in the opinion, is *held* to establish *prima facie* that plaintiff was a fellow-servant of the other employees engaged in the construction of a scaffold.

4. A master cannot evade his duty to use ordinary care to furnish his servants with reasonably safe appliances by delegating that duty to a fellow-servant of the injured party.

5. Such rule, however, is modified where the appliance requires selection, or selection and construction, since the master, after having exercised due care in furnishing implements or material for construction, may delegate the duty of selection, or selection and construction, to his servants, including the injured person and the fellow-servants of the latter.

6. To bring a situation within such modification it must appear, as for example in the case of an unsafe or defective scaffold, that the master did furnish suitable material for its construction or did furnish material from which the servants intrusted with the duty of selection could have selected suitable material.

7. In an action for personal injuries to a servant alleged to have been occasioned by defective material used in the construction of a scaffold, it is *held* that it did not affirmatively appear from the evidence, stated in the opinion, that the master had furnished suitable material for the construction of the scaffold

from which the servants, including plaintiff, could have made a proper selection, and hence it was error to grant a nonsuit.

8. In such case it was also *held* under the evidence, stated in the opinion, that it did not affirmatively appear that the servant was guilty of contributory negligence in selecting material for the scaffold.

9. Except where the proof of contributory negligence is so clear and decisive as to leave no room for unbiased and impartial minds to come to any other conclusion, the question of such negligence must be determined by the jury.

10. In an action by a servant for personal injuries through the breaking of a three-inch plank at a place where an inch auger hole was bored through it from edge to edge, such plank being used in a scaffold on which plaintiff was at work, composed of boards and plank in part selected by plaintiff from a supply designated by the master, it is *held* that questions whether plaintiff carried over or selected the defective plank; whether he knew it was to be used or was used as part of the scaffold platform; whether he observed, or in the exercise of ordinary care ought to have observed, the auger hole bored through the plank from edge to edge; or whether, having observed it, he ought in the exercise of ordinary care to have known that a three-inch plank containing such a hole would be weaker than a two-inch plank of the same dimensions without such hole or would be unsafe or unfit for use in the scaffold, were under the evidence, stated in the opinion, items of fact to be considered by the jury in determining the question of plaintiff's contributory negligence.

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Reversed.*

The appeal is from a judgment of nonsuit given in a personal injury action based on the alleged negligence of both defendants. It appears from the complaint that at the time the plaintiff was injured on October 4, 1905, and before that time, he was in the employ of the defendant lumber company, and that a contract existed between the blower works and the lumber company whereby the former undertook to erect and put in place for the latter a sawdust or shavings blower, the erection of which involved the putting in of a large iron horizontal pipe and the erection and use

of scaffolding for the purpose of lifting said horizontal pipe into place. The plaintiff, with some other employees of the lumber company, was directed by the lumber company to assist the agents and servants of the blower works in the erection and construction of the sawdust blower and shavings pipe. In doing this work it was necessary for all the servants and employees of each defendant assisting in the work to stand on a scaffold or stage used in said work. The plaintiff did so stand on a scaffold, which gave way and threw the plaintiff to the ground, injuring him. It was charged to be the duty of the defendants and each of them to erect and construct the scaffolding and staging as aforesaid with reasonable safety and to furnish the plaintiff a reasonably safe place for the performance of his work, which the defendant failed to do, and in consequence of which plaintiff was injured by the fall of the scaffolding.

The defendants answered separately, the lumber company denying all charges of negligence in the erection or construction of the scaffolding and denying that it or its agents or servants had anything whatever to do with the erection or construction of the scaffold. This answer further showed that the blower works and the lumber company entered into a contract by which the latter agreed to put up and erect for the lumber company a sawdust blower and shavings pipe, which contract was made a part of the answer, and that the scaffolding in question was wholly erected and constructed by the blower works. The contract itself seems to make it the duty of the lumber company to furnish scaffolding, but the answer of which it is a part avers that all the men, including the plaintiff, employed in erecting and constructing the scaffolding were in the employ and under the sole and exclusive control, management, and direction of the blower works, and the lumber company exercised no control, management, or direction in or about any of the work. The separate answer of the blower works pleaded the same agreement and

that it was engaged in the erection of the blower in question on October 4, 1905, and prior, admitting, among other things, that the method employed and adopted by it in putting up said horizontal pipe was the construction of a scaffolding, describing it, and that its servants were required to stand on said scaffold during the process of elevating said pipe, and that the plaintiff, assisting in hoisting a section of said pipe, did go on the scaffold erected for that purpose, but denies that the scaffold broke down and that the plaintiff was thrown to the ground, and denies that by reason of any negligence on the part of its codefendants the plaintiff sustained an injury or damage.

The evidence showed the mode of placing the pipe in position up to the last fourteen or sixteen foot section thereof, which evidence is not very material. When it came to placing in position the last section of the pipe, a scaffold was erected at a height of from ten to fourteen feet, one end of which was supported on the boiler room and the remainder of the scaffold supported by two sets of posts six to eight feet apart, consisting of pieces of plank two by six inches and about fourteen feet long, set up on end and braced diagonally with other boards or plank from top to bottom, the braces crossing at the middle. There were cross-pieces nailed near the top of these posts to lay plank on, and upon these cross-pieces at right angles thereto, extending in the direction of the length of the pipe, were placed the platform planks, and it appears from some of the evidence that there were short pieces of board or plank laid across these planks, at least in some places. This scaffold was used to lift the pipe from the ground into place by men with ropes, who stood on the scaffold, and, pulling on the ropes, rolled the pipe upon skids into place on the scaffold, where it was to be riveted to the other portion of the pipe already in place. All the work of putting the pipe in place, including the building and preparation of the scaffold, was under the charge of the foreman of

the blower works, and all the men, including the plaintiff, assisting at such work were under his direction while they were so assisting. Directed by such foreman the plaintiff collected from about 8,000 feet of old lumber in the yard probably belonging to the lumber company, and carried over to the place where the blower pipe was being elevated, material, boards and plank for the building of the scaffold. He was not directed to any particular place or pile of lumber, and there was old lumber around there, more than one pile, nearly all kinds from inch stuff up. The plaintiff did carry over material for the scaffold, but had nothing to do with building the scaffold and did not put any boards on the scaffold. In his selection of material for the scaffold he was confined to the old boards and lumber, which had theretofore formed part of some dismantled mill or house, by reason of an order given him by his employer some time before not to take any of the hardwood lumber, because it was to go into the floor of the box factory. One of the plank described as resting upon the cross-pieces, a pine plank old and whitewashed, three inches thick and having an inch or three-quarter inch hole bored through it from edge to edge, broke at the place where the hole was bored through and caused the plaintiff's fall and injury. This hole in the plank was visible, but the plaintiff did not see it before the plank broke. The plaintiff denied that he selected or placed in position this particular plank, and the evidence tended strongly to show that the breaking of this defective plank was the cause of the fall of the scaffold and of plaintiff's injury.

For the appellant there were briefs by *W. H. Frawley* and *T. F. Frawley,* and oral argument by *T. F. Frawley.*

For the respondents there was a brief signed by *Kanneberg & Cochems* for the *National Blower Works* and by *D. Buchanan, Jr.,* for the *John H. Kaiser Lumber Company,* and the cause was argued orally by *A. A. Kanneberg.*

Among other references cited upon the part of the appel-

lant were the following: *Bright v. Barnett & R. Co.* 88 Wis.
299, 60 N. W. 418; *Huset v. J. I. Case T. M. Co.* 120 Fed.
865, 61 L. R. A. 303; *Cadden v. Am. S. B. Co.* 88 Wis. 409,
60 N. W. 800; *Phillips v. C., M. & St. P. R. Co.* 64 Wis.
475, 25 N. W. 544; *MacCarthy v. Whitcomb,* 110 Wis. 113,
85 N. W. 707; *Brady v. C. & G. W. R. Co.* 114 Fed. 100.

Among other references cited upon the part of the respond-
ents were the following: *Van den Heuvel v. Nat. F. Co.* 84
Wis. 636, 54 N. W. 1016; *Johnson v. Ashland W. Co.* 71
Wis. 553, 37 N. W. 823; *S. C.* 77 Wis. 51, 45 N. W. 807;
*Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338, 21 N. W.
269; *Peffer v. Cutler,* 83 Wis. 281, 53 N. W. 508; *Blazinski
v. Perkins,* 77 Wis. 9, 45 N. W. 947; *Steffen v. C. & N. W.
R. Co.* 46 Wis. 259, 50 N. W. 348; *Hoth v. Peters,* 55 Wis.
405, 13 N. W. 219.

TIMLIN, J. The evidence is quite vague and unsatisfac-
tory. Neither the direct nor the cross-examination of wit-
nesses was carried far enough to bring out the facts upon
which the case in all probability must ultimately turn. How
did the blower works come to be erecting this scaffold when
the contract attached to the answer seemed to require its erec-
tion by the lumber company? What arrangements actually
existed between the defendants with respect to the construc-
tion of this scaffold at the time of building this scaffold?
Who furnished the material for the scaffold? These ques-
tions might be material to bring the case either within the
rule of *Vary v. B., C. R. & M. R. Co.* 42 Iowa, 246, or within
the rule of *Welch v. Maine Cent. R. Co.* 86 Me. 552, 30 Atl.
116, 25 L. R. A. 658. Upon the evidence presented we are
compelled to assume that the defendants co-operated in the
construction of the scaffold, the blower works assuming charge
of the work through its foreman and certain employees of the
lumber company sent by the latter to assist in the construc-
tion, but under the direction and control for the time being

of the blower works. In this assumed joint work of construction both defendants furnished the material wherewith to construct the scaffold.

The trial court granted a nonsuit "on the ground either that the plaintiff was a fellow-servant in the erection of the scaffold or was guilty of contributory negligence." These grounds are distinct and dissimilar in law. Examining the first ground of nonsuit with reference to the evidence, it perhaps sufficiently appears *prima facie* that the plaintiff was a fellow-servant with the other men, employees of the blower works and employees of the lumber company, engaged in the construction of the scaffold. But the scaffold was an appliance used in doing the work, and the general rule of law is that the master cannot evade his duty to use ordinary care to furnish his servants with reasonably safe appliances by delegating that duty to a fellow-servant of the injured party. At the same time a modification of this rule is recognized where the appliance requires selection, or selection and construction, because in that case the master, after having exercised due care in furnishing implements or material for construction, may delegate the duty of selection, or of selection and construction, to his servants, including the injured person and the fellow-servant of the latter. *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338, 21 N. W. 269; *Van den Heuvel v. Nat. F. Co.* 84 Wis. 636, 54 N. W. 1016; *Cadden v. Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800. But to bring the case within this exception it must appear in the case of an unsafe or defective scaffold that the master did furnish suitable material for its construction or did furnish material from which the servants intrusted with the duty of selection could have selected suitable material. In the instant case the lumber for the scaffold was collected by plaintiff from lumber in the yard, and from the lumber so collected the scaffold was erected by those whom we may, for the purpose of testing this question, consider as the fellow-servants of the plaintiff. There

was about 8,000 feet of this lumber in the yard in different piles scattered along the track. The plaintiff testified that this was rotten old lumber and that he picked out the best there was there and carried it over to where the scaffold was to be built. It was nearly all kinds of lumber from inch stuff up. He had orders from his employer not to select the new hardwood plank, which was required for the floor of the box factory. The other lumber was old lumber with nails in it and had been used before, probably in an old mill. Mr. Sukopp, a witness for the plaintiff, testified that it was old lumber that had been torn out of an old mill and that you could tell by glancing at it. It had been used in the construction of some building. The pieces were of all sizes. There were nails and auger holes in some of the pieces and this could be readily observed. We conclude from this evidence that it did not affirmatively appear, as it must from the evidence on the part of the plaintiff in order to justify a nonsuit on this ground, that the master had furnished suitable material for the construction of this scaffold from which the plaintiff could have made a proper selection. This showing is essential in order to bring the case within the fellow-servant rule above referred to.

Next, does it affirmatively appear from the evidence upon the part of the plaintiff that the plaintiff was guilty of contributory negligence? The testimony shows that while the other workmen were engaged in erecting the scaffold in question the plaintiff was, at the orders of Goethel, the foreman in the employment of the blower works, engaged in carrying from the yard to the scaffold lumber to be used in the erection of the scaffold. The scaffold consisted of upright pieces connected near the top by cross-pieces for sleepers or joists upon which to lay the platform, boards or plank nailed diagonally on the upright pieces for braces, and a platform at the top. The plaintiff took no part in constructing the scaffold or putting the pieces thereof in place. Among other lumber there

was used in the construction of the scaffold as part of the platform a three-inch plank twelve inches wide and fourteen or sixteen feet long, having a three-quarter inch or an inch auger hole bored through it from edge to edge and about in the middle of the plank. This plank was placed by those engaged in constructing the scaffold on the platform thereof, resting on the cross-pieces or joists before mentioned, and when the plaintiff with other workmen mounted the scaffold and stood on the platform in order to lift the iron pipe into place, this plank broke at the place where the auger hole was bored through and let the plaintiff down, injuring him. While there might be some presumption that the plaintiff carried over this particular plank and saw this auger hole and that he knew this particular plank was to be used or might be used as part of the platform of the scaffold and thus charge him with want of ordinary care contributing to produce his injury, and while there is evidence that this defect was readily observable, there is also evidence on the part of the plaintiff as follows:

"I didn't see the hole in the board that broke and do not know myself what it was. Until a few days ago I did not know there was a hole in the board, nothing about it. I didn't help build the scaffold at all. . . . I did not pick out the three-inch plank that was placed in the scaffold. I didn't look after any holes in this lumber. I didn't see any, so far as I can remember of. There was lots of boards with holes in lying around there. I don't know if they were auger holes; holes in timber and planks and boards. I don't know what kind of holes these were; were holes right through the board and plank. As to whether this lumber and plank that was lying around there had such holes, I don't know. I don't know how many there was. I see some there. I did not carry any three-inch planks over there at all."

A witness for the plaintiff testified:

"I remember the plank in the scaffold in question which had the auger hole in it and which broke. Apparently it was, otherwise than the auger hole, a sound plank. I didn't

take any notice of any defects at all; saw none. I saw no other defects about the plank except this auger hole. It broke right across where the auger hole was. It tore out a few slivers. I couldn't say what kind of pine it was. It was a whitewashed board."

Except in cases where the proof of contributory negligence is so clear and decisive as to leave no room for unbiased and impartial minds to come to any other conclusion, the question of such negligence must be determined by the jury. *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573. Whether the plaintiff carried over or selected the defective plank in question; whether he knew it was to be used or was used as part of the scaffold platform; whether he observed, or in the exercise of ordinary care ought to have observed, the auger hole bored through the plank from edge to edge; or whether, having observed it, he ought in the exercise of ordinary care to have known that a three-inch pine plank of that width, thickness, and length containing such a hole would be weaker than a two-inch plank of the same dimensions without such hole or would be unsafe or unfit for use in a scaffold, were, we think, under the evidence items of fact to be considered by a jury in determining the question of the plaintiff's contributory negligence.

It follows that the judgment of nonsuit must be reversed.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.

BASHFORD, J., took no part.