## BARNSDALL OIL CO. v. OHLER.

No. 6287. Filed June 1, 1915.

Rehearing Denied July 6, 1915.

(150 Pac. 98.)

1. **MASTER AND SERVANT—Injuries to Servant—Safe Place to Work—Scaffolding.** If a person is sent to work upon a tubing board, already fixed and placed in a derrick, or if he is sent to use a tubing board in his work which the master undertook to install, or where the master undertook, either in person or through an employee, to supervise the installation, the rule would be otherwise, but where the master does not himself undertake the duty of furnishing such a structure as a tubing board, but merely supplies suitable materials and reasonably competent fellow servants by which it may be constructed, and reasonably adapted to the work, and the duty of installing the tubing board as an appliance for use is intrusted to or assumed by the workmen themselves, the employer is not answerable to one of the workmen for the negligence of himself or of a fellow servant in the construction of the tubing board.

2. **SAME—Material—Duties of Master and Servant.** It is well settled that where a master has provided an adequate and readily accessible stock of appliances in good condition, from which to make a selection, and the imperfection of the instrumentality selected therefrom was, or ought to have been, apparent to the servant who selected it, the master cannot be held responsible for injuries which were sustained by the instrumentality, whether the sufferer be the servant himself who made the selection, or a coemployee.

3. **SAME.** Limits of a master's liability for an injury caused by a scaffold or other appliance constructed or adjusted as a part of the work are determined upon the hypothesis that it is his duty, in the alternative, "to furnish either a suitable platform or scaffold for doing the work that the plaintiff and his coemployees were required to do, or proper and suitable materials for the construction of such a platform."

4. **SAME—Negligence of Fellow Servants.** The rule is that where the employee in authority, representing the master, undertakes to plan a scaffold and to superintend its construction by ordinary unskilled laborers, such person thinks for the master, and the servant who uses it does not take the risks of defects or design. If, however, the master delivers to such laborers materials well suited to that purpose, leaving it to their discretion to devise the plan of so simple a contrivance as they proceed with the work, a servant injured in its use cannot recover from the master, and this is true whether the defect was of plan or construction. In either case the injury would be imputable to the negligence of fellow servants.

5. **SAME—Question for Jury—Contributory Negligence.** Under a constitutional provision requiring it, contributory negligence is a question which the court must never decide, but it must be submitted to the jury for their determination, but contributory negligence on the part of the plaintiff presupposes negligence on the part of the defendant. Before the question of contributory negligence on the part of the plaintiff can arise, negligence of the defendant must first be shown. If there is no negligence upon the part of the defendant shown, and the negligence of the plaintiff only, or of his fellow servant, caused the injury, then it is primary, not contributory, negligence on his part, and there can be no case to go to the jury, where a state of facts is presented as in the case at bar, where the primary negligence was caused by the plaintiff or his fellow servant.

(Syllabus by Mathews, C.)

*Error from District Court, Osage County;*

*R. H. Hudson, Judge.*

Action by G. B. Ohler against the Barnsdall Oil Company, a corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to enter a judgment sustaining defendant's demurrer to the evidence.

*Sherman, Veasey & O'Meara,* for plaintiff in error.

*H. B. Martin* and *A. F. Moss,* for defendant in error.

Opinion by MATHEWS, C. This action was instituted for the recovery of damages for personal injuries. The parties hereto will be designated as they appeared in the lower court. The petitioner, in substance, alleges that he was employed by defendants as a member of a tubing crew, who were engaged in pulling tubing from oil wells and at the time of the injury were putting back tubing in an oil well, and that in so doing it was necessary for him to stand on a platform called a tubing board, constructed on the derrick about 40 feet above the derrick floor. Plaintiff further alleged that defendant was negligent in the construction of said derrick and tubing board in nailing a timber or board across the tubing board so that the end thereof extended about 18 inches over and beyond the edge of the tubing board; that while engaged in putting tubing in said well, as an employee of defendant, with other employees, they used a heavy wire line lifting and hoisting said tubing, which line ran through a pulley at the top of the derrick, and that while engaged in lowering the tubing into the well, the said line caught over the projecting end of said board, and when the weight of the tubing pulled said line taut, this caused the tubing board upon which plaintiff was standing to be pulled off the girt around the derrick upon which one end of the tubing board was resting, which caused plaintiff to fall to the floor of the derrick, a distance of 40 feet, from which he received severe injuries. The petition contained no statement as to who constructed and installed the tubing board, but merely cites that defendant and its employees did. As far as the necessities of this opinion require, we will only set out the fifth paragraph of defendant's answer, which is as follows:

"For additional defense to plaintiff's petition the defendant says that plaintiff's injury, if any he received, was the result of a concurrent negligence of himself and of those with whom he was working as his fellow servants in the same line of work, and his injury, if any he received, was attributable entirely to his own want of care and to the want of care of those who were, at the time, engaged with him in the same line of labor."

Plaintiff met this answer with a denial, and at the trial a verdict was returned in favor of plaintiff, and from the judgment upon this verdict defendant appealed to this court.

There is but one vital, controlling point in this case. The theory upon which the plaintiff launched his petition, and which the trial court adopted and upon which he submitted the case to the jury, was that the tubing board upon an oil derrick was a permanent part thereof and a completed instrumentality and a place in which to work, and that it was a personal, primary, nonassignable, nondelegable, positive duty of the defendant, under such conditions, to furnish plaintiff, while working for defendant in pulling tubing and replacing the same when it became necessary for him to use the tubing board, a completed instrumentality and a reasonably safe place in which to work, and that under those conditions defendant could not interpose as a defense its contention that the plaintiff, with other employes of defendant, composing a tubing crew, could not hold defendant liable for a negligent act of plaintiff, or of a fellow servant, in installing the tubing board preparatory to using the same in replacing tubes and rod in the oil well.

The facts in the case are that the plaintiff, one J. W. Smiley, Less Craig, and another, at the time of the accident, composed what is known as a tubing crew in the

employ of defendant. It seems that the way a tubing crew work together is for one of the crew to stand on what is known as the tubing board, in order to handle the upper end of the piping when drawn from the well, and to arrange the upper end of the pipe against the tubing board, and when the piping is being put in the well, he stands on the same tubing board to place the line around the top of the tubing so it can be lowered into the well, the other members of the crew remaining on the ground in various capacities.

When the tubing crew came to the derrick the day before the accident to pull the tubing, the tubing board was on the sixth girt of the derrick, and it was taken down to the ground and was then by plaintiff and Smiley again hoisted and placed on the fourth girt of the derrick. Smiley and the plaintiff both ascended the ladder to the fourth girt and proceeded to install the tubing board by placing the board so that one end rested on the east and one on the west girt of the derrick, having a play of about four inches on each side of the two girts. In order to brace the tubing board so as to make it secure enough to permit the laying of one end of the drawn piping against it, they then proceeded to nail crosspieces on the top side of the board, two of the crosspieces extending the entire width of the board and back to the legs of the derrick, there being four crosspieces, the plaintiff nailing all of the crosspieces except the west one, which Smiley arranged and nailed, the crosspiece placed on by Smiley extending over and beyond the front end of the tubing board about a foot or 18 inches, and the crosspiece did not exactly coincide with the west girt, but was about two inches to the east of it. It took about 15 minutes to install the tubing board, and then the crew first

pulled the tubing, all of the crew being on the ground except the plaintiff, who occupied the tubing board, and attended to the duties of that position as above stated. After the piping had been drawn from the well, when it was being replaced the next day, the plaintiff, on the tubing board, had placed the elevator line around the piping to be lowered, but while the line was slack, in some way it got caught on the projecting portion of the crosspiece nailed on the tubing board by Smiley, and when it was drawn tight by the weight of the piping, which was about 9,000 pounds, the line coming perpendicular, pulled the tubing board off of the girt supporting the same, and thereby plaintiff was thrown from said tubing board to the floor of the derrick, a distance of about 40 feet; the plaintiff receiving very severe injuries.

There can be no controversy upon the point that plaintiff and Smiley and other employees of defendant were fellow servants at the time they were installing the tubing board. The evidence is conclusive thereon, and plaintiff admits it. There is also no controversy as to how the accident that occasioned the injury occurred, it being uncontested that the accident was occasioned by the wire line, when slacked, getting caught on the projecting end of the plank or timber nailed on the tubing board by Smiley, a coemployee, and when the weight of the tubing was placed on the wire rope, it, becoming taut, pulled the end of the tubing board off of the west girt of the derrick upon which it was resting.

Defendant advances two reasons why the plaintiff should not recover, as follows:

"(a) That the appellee's own negligence, not contributory negligence, but primary negligence, caused his injury.

"(b) That appellee and his fellow servant, Smiley, selected the material out of which the tubing board was built; that the material from which they made the selection was sound; that the only error consisted in the assembling of this material; and the particular negligence of which the appellee complains is that Smiley, being in a hurry, neglected to saw off the end of the projecting plank over which, through the appellee's primary negligence, the wire line caught."

Plaintiff urges the following three reasons in support of the judgment:

"First. Under the evidence in this case, the tubing board in the derrick is a permanent part thereof and a place on which to work, beyond controversy or dispute, and the court committed no error in assuming that to be a fact.

"Second. Accepting defendant's construction of the evidence, the construction or installation of a tubing board for a single operation or a single pulling and replacement of the tubes and rods constitutes a completed instrumentality or place in which to work.

"Third. The trial court instructed the jury upon the theory that the tubing board in the derrick was a permanent structure, a completed instrumentality, and a place in which to work, and the defendant did not offer an instruction submitting to the jury the question of whether or not the tubing board in the derrick was a permanent part of the structure and a place in which to work, and has thereby waived all its rights to have that question submitted to the jury."

This case has been presented on each side, both by brief and oral argument, with unusual care and ability. Plaintiff presents his case upon the proposition that a tubing board is a permanent part of an oil derrick and constitutes a completed instrumentality, a place in which to work, and that it is the nondelegable duty of the master

to see that it is reasonably safe for that purpose, but argues further, to meet defendant's contention, and says that, even though the installation of a tubing board for the pulling and replacing of the tubes and rods be for a single pulling, yet even then it constitutes a completed instrumentality or place in which to work.

Defendant challenges the position of plaintiff by asserting that its contention in this case has never been questioned by a court of last resort either in this country or England. After an examination of the available authorities on this subject we have reached the decision that the propositions advanced by defendant in (a) and (b), *supra*, are each unassailable, and are supported by all the authorities of this and sister states.

There can be no contention that if a man were sent upon a tubing board already fixed and placed in a derrick, or if he were sent to use a tubing board in his work which the master undertook to install, or where the master undertook, either in person or through an employee, to supervise the installation, the rule would be otherwise, but where the master does not himself undertake the duty of furnishing such a structure as a tubing board, but merely supplies suitable materials and reasonably competent fellow servants by which it may be constructed and reasonably adapted to the work, and the duty of installing the tubing board as an appliance for use is intrusted to or assumed by the workmen themselves, the employer is not answerable to one of the workmen for the negligence of himself or of a fellow servant in the construction of the tubing board. United States: *Conner v. Pioneer Fire-Proof Const. Co.* (C. C.), 29 Fed. 629; *Kerr-Murray Mfg. Co. v. Hess,* 98 Fed. 56, 38 C. C. A. 647; *Phoenix Bridge Co. v. Castleberry,* 131 Fed. 175, 65 C. C. A. 481;

*Noble v. Crane,* 169 Fed. 55, 94 C. C. A. 423; *Crane v. Sesher,* 172 Fed. 1022, 96 C. C. A. 665. California: *McDonald v. Hoffman,* 10 Cal. App. 515, 102 Pac. 673. Delaware: *Donovan v. Harlan, etc., Co.,* 2 Pennewill, 190, 44 Atl. 619. Idaho: *Larsen v. Le Doux,* 11 Idaho, 49, 81 Pac. 600. Indiana: *Perigo v. Indianapolis Brewing Co.,* 21 Ind. App. 338, 52 N. E. 462. Iowa: *Benn v. Null,* 65 Iowa, 407, 21 N. W. 700; *Trcka v. Burlington,* 100 Iowa, 205, 69 N. W. 422. Kansas: *Kelly v. Detroit Bridge Works,* 17 Kan. 558. Maine: *McCarthy v. Claflin,* 99 Me. 290, 59 Atl. 293. Massachusetts: *Kelley v. Norcross,* 121 Mass. 508; *Colton v. Richards,* 123 Mass. 484; *Kolleck v. Deering,* 161 Mass. 469, 37 N. E. 450, 42 Am. St. Rep. 421; *White v. Unwin,* 188 Mass. 490, 74 N. E. 924. Michigan: *Hoar v. Merritt,* 62 Mich. 386, 29 N. W. 15; *Landowski v. Chapoton,* 137 Mich. 429, 100 N. W. 564. Missouri: *Bowen v. Chicago, etc., R. Co.,* 95 Mo. 268, 8 S. W. 230; *Herbert v. Wiggins Ferry Co.,* 107 Mo. App. 287, 80 S. W. 978. New Jersey: *Maher v. McGrath,* 58 N. J. Law, 469, 33 Atl. 945; *Enright v. Oliver,* 69 N. J. Law, 357, 55 Atl. 277, 101 Am. St. Rep. 710. New York: *Pickett v. Atlas Steamship Co.,* 12 Daly, 441; *Kimmer v. Weber,* 151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630; *Sozansky v. Interborough Rapid Transit Co.* (Sup.) 117 N. Y. Supp. 201. Oregon: *Willis v. Oregon R. Co.,* 11 Or. 257, 4 Pac. 121. Pennsylvania: *Ross v. Walker,* 139 Pa. 42, 21 Atl. 157, 159, 23 Am. St. Rep. 160. Texas: *Maughmer v. Behring,* 19 Tex. Civ. App. 299, 46 S. W. 917. Vermont: *Lambert v. Missisquoi Pulp Co.,* 72 Vt. 278, 47 Atl. 1085; *Garrow v. Miller,* 72 Vt. 284, 47 Atl. 1087. Washington: *Metzler v. McKenzie,* 34 Wash. 470, 76 Pac. 114; *Penson v. Inland Empire Paper Co.,* 73 Wash. 338, 132 Pac. 39.

Wisconsin: *Hoveland v. National Blower Works*, 134 Wis. 342, 114 N. W. 795, 14 L. R. A. (N. S.) 1254.

It would be a question for the jury, under proper instructions, where it was contested and the evidence conflicting, as to whether or not the master understood to furnish a completed and installed tubing board, or to supervise its construction, or whether or not he furnished suitable material out of which to construct it, or competent fellow servants, but none of these matters are contested as far as the evidence is concerned, and the question involved here is more a question of law. There is no contention but that Smiley and the plaintiff at all times were fellow servants, but plaintiff insists that while they may have been fellow servants in the installation of the tubing board, and although plaintiff himself and a fellow servant may have installed the tubing board, and even though the plaintiff himself went to work upon the tubing board almost immediately afterwards, yet it was the nondelegable duty of the master to make and keep safe that which he and his fellow servant had just constructed without the remotest supervision, direction, or instruction from the master, even though he may have furnished material therefor about the suitableness and adaptability of which for that purpose no contention is advanced, and that it was the positive duty of the master to furnish a safe place for him to work five minutes later, even though the unsafety of the place was due entirely to his own carelessness and that of his fellow servant in constructing it. It appears to us that such a doctrine is rejected by all justice, reason, and fairness. Law is supposed to be promulgated to adjust equities and existing rights between conflicting parties. We fail to discern the justness of a rule that would hold one party should be mulcted in dam-

ages for an injury to another, where it cannot be shown that he has been derelict in some duty he owed to the other. Defendant in this case furnished suitable material, adapted to the use it was intended for. There is no complaint about that. Defendant furnished competent fellow servants. At least no complaint is raised about that, but plaintiff rests his case upon a legal proposition that it is a nondelegable duty of the master to furnish the servant a safe place in which to work under conditions similar to those presented in this case. Both reason and all authorities brought to our attention point the other way.

Plaintiff lays much stress upon his contention that the evidence admitted at the trial shows that a tubing board is a completed instrumentality, and therefore urges that his case should be brought within the scope of a line of authorities relative to completed structures, but we think his case falls wide of that contention. The admitted evidence in this case shows that, as far as this particular derrick was concerned, this tubing board was a movable affair, because the plaintiff and Smiley had just transferred it from the sixth to the fourth girt so that it might be made to suit their purpose better. The business in which they were then engaged was pulling and replacing tubing; the installation of a tubing board was a mere incident to their employment, a mere detail, preliminary to the main transaction of pulling and replacing tubing.

Further, should it be true that a tubing board was a permanent part of an oil derrick and a completed instrumentality, the evidence shows that the plaintiff found this tubing board attached to the sixth girt of the derrick, and it was there, to use plaintiff's position, as a permanent part of that derrick; when plaintiff assumes to transfer it

to some other part of the derrick, for the time being, he unsettles its permanency.

For authorities we feel that it is unnecessary to cite other than Labatt's Master and Servant (2d Ed.), which author we find has well covered the point in issue. Section 1533 thereof is as follows:

"It is well settled that where a master has provided an adequate and readily accessible stock of appliances in good condition, from which to make a selection, and the imperfection of the instrumentality selected therefrom was, or ought to have been, apparent to the servant who selected it, the master cannot be held responsible for injuries which were sustained by the instrumentality, whether the sufferer be the servant himself who made the selection or a coemployee."

"Section 1545. The general rule to which, for reasons to be explained in the following section, the courts have now committed themselves may be stated thus: If the master supplies suitable material for the construction of an appliance which he is not obliged, and has not undertaken, to furnish in a completed state, and the workmen themselves construct it according to their own judgment, the master is not liable for the manner in which they used the materials thus supplied.

"Section 1546. The limits of a master's liability for an injury caused by a scaffold or other appliance constructed or adjusted as a part of the work are determined upon the hypothesis that it is his duty, in the alternative, 'to furnish either a suitable platform or scaffold for doing the work that the plaintiff and his coemployees were required to do, or proper and suitable materials for the construction of such a platform.' * * *

'What that relation is may, as an analysis of the cases shows, be determined by following either one of two lines of investigation, to each of which certain logical conceptions are peculiarly appropriate. For the sake of

clearness, therefore, it will be well to differentiate between the alternative theories of the evidence which is customarily presented in cases of this class, though at the same time it should be remarked that the interval between them is so easily bridged that the courts quite commonly pass from one to the other in the course of the same opinion."

In *Lambert v. Missisquoi Pulp Co., supra,* the instruction given by the court was practically the same as the one given in the case at bar. The court said:

"There is a plain distinction between places prepared by the master through the agency of one class of servants for the occupancy of another class in some employment to be therein carried on and places prepared for temporary use in the erection of a building by those employed for that work. The latter are not places in which to work in the ordinary sense of the term, but instrumentalities which the workmen themselves provide as means of carrying on the work they are employed to do."

In *Cheatham v. Hogan,* 50 Wash. 465, 97 Pac. 499, 22 L. R. A. (N. S.) 951, the court recognized the same rule, but drew the distinction thus:

"When one servant of a master constructs a scaffold for a particular purpose of the master, uses it for that purpose, and then leaves it standing, and the master afterwards directs another servant, who had no part in its construction, to use it for another purpose, the master adopts the scaffold as his own, and thereby guarantees that it is a safe place on which to work."

In *Penson v. Inland Empire Paper Co., supra,* the distinction is keenly made. The court says:

"It is first contended that there was no duty on the appellant to construct the scaffolds or to keep them safe, and therefore there could be no negligence in that regard. While it is sometimes broadly stated as a general rule that

the master's duty is performed when he has furnished suitable materials for scaffolds and competent fellow servants, it is only so because under the facts in a majority of the decided cases the master assumed no other duty. Even then the workmen must be left to construct the scaffolds themselves according to their own judgment, without superintendence by the master or his representative, in order to entirely relieve the master from responsibility for the manner in which the work is done. Labatt, Master and Servant, sec. 614; *Metzler v. McKenzie,* 34 Wash. 470, 76 Pac. 114; *Muehlman v. Spokane & Inland Empire R. Co.,* 58 Wash. 327, 108 Pac. 764."

The court then goes on to review other authorities, but draws the distinction that if the master actually supervises or controls, then the rule is different:

"The act of choosing between the alternatives was the determinative act, and that choice belonged only to the master. When the choice was made, as in this case, by one clothed by the master with apparent authority to make it, and he elected to build the scaffolding himself, neither the election nor the work done in pursuance of it was an act of fellow service, but pertained to the master. The evidence here is clear and convincing that the appellant's foreman in actual and apparently complete control of the work, actually assumed the duty of constructing the scaffolds, and did so with the assistance of a man selected by himself for the purpose" (citing authorities).

In this last case, the various sections we have quoted from Labatt are discussed by the Supreme Court of Washington. No single case, either in a state or federal court of the United States, can be found wherein it is held that the master is liable for the negligence of a fellow servant in erecting a platform upon which to work, where the master merely furnishes the material and lets the servants construct the same in their own

way without interference or instruction. Every case that may be referred to wherein the master is held liable can be distinguished from the case at bar in this: That in each case the master either : (a) Furnished or agreed to furnish a completed structure; or (b) supervised the construction of the structure; or (c) placed a workman who had nothing to do with the building of the structure upon a completed structure.

The case of *Petroleum Iron Works Co. v. Wantland*, 28 Okla. 481, 114 Pac. 717, is not in point, for the reason it was alleged and proved in that case that inexperienced men had been employed in building the scaffold, and that the material out of which it was built was unsuitable, that the plaintiff was an inexperienced miner, and that no rules or regulations were promulgated, and the evidence entirely failed to show that either the plaintiff or his fellow servants were engaged in the building of this scaffold. The evidence showed that some of the planks were thick and some were thin, and the scaffold for that reason unsteady.

In *Johnson v. Otis Elevator Co.*, 211 Mass. 504, 98 N. E. 505, it is said:

"It is plain upon the evidence that the defendant was not expected and did not undertake to construct the staging. It was to furnish the materials suitable for the purpose, and the employees were to do the rest. There was no evidence of any want of suitable material, nor is there any claim that the defendant did not furnish lumber enough for the needed crossbar. This very stage was made by the fellow employees of the plaintiff, one of whom, McKane, was on the stage at the time it slipped. It was a conservatively simple contrivance. The evidence did not warrant the finding that it was a completed appliance about which as such the defendant was answer-

able for due care. Whether the accident was due to an improper adjustment or construction of the crow's feet or to lack of a crossbar, in either event the negligence was not that of the employer but of a fellow servant, for which at common law the defendant is not answerable to the plaintiff. And that is so whether or not the plaintiff himself actually helped to build the stage, or saw it before it was placed in position for use."

In *Kimmer v. Weber, supra,* we find:

"We think that the plaintiffs failed to make out a case for the consideration of a jury for these reasons: (1) It was not shown that it was the duty of the master, under the circumstances, to construct the platform on which the masons were to work. (2) The proof shows that the duty was assumed by the workmen as one of the details of the work. (3) It was not shown that the defendants, or their foreman, actually constructed or directed the construction of a platform. (4) It was not shown that the plumbers' scaffold which gave way was any part of the material furnished by the defendants or the foreman, or that they contemplated the use of it for the purpose to which it was put."

We have not found the particular question passed upon by the Oklahoma Supreme Court, but the general doctrine is supported by *Molhoff v. Chicago, R. I. & P. R. Co.,* 15 Okla. 540, 82 Pac. 733, and *E. Van Winkle Gin & Machine Co. v. Brooks,* 29 Okla. 351, 116 Pac. 908.

The two cases recently decided by the Supreme Court of Oklahoma, *Oklahoma Portland Cement Co. v. C. W. Sheperd,* 47 Okla. 258, 147 Pac. 1031, and *Oklahoma Portland Cement Co. v. Brown,* 45 Okla. 476, 146 Pac. 6, sustain the general doctrine to which we have referred. In each of these cases the court recognizes the rule that, if the servants themselves undertake to perform certain services, and the master does not undertake to supervise

the method in which they are performed, but provides adequate materials or repairs, which they may use, the master is not liable for the negligent use of the materials or repairs by a fellow servant.

The defendant in error's brief cites *Hicks v. Davis,* 32 Okla. 195, 120 Pac. 260; *Henry v. Kaw Boiler Works,* 87 Kan. 571, 125 Pac. 67; *Tomaselli v. John Griffiths Cycle Corporation,* 9 App. Div. 127, 41 N. Y. Supp. 51. It is our intention to refer briefly to each of these cases.

In *Hicks v. Davis, supra,* the plaintiff in error asked an instruction something similar to instruction B, which was asked by the plaintiff in error in this case. In commenting on the failure to give that instruction Judge Robertson says:

"It was wholly unnecessary to give such an instruction, for the record shows without dispute that, while the plaintiff helped to carry and place the planks used in making the runway, yet he did all under the supervision and direction of the defendant, and that the defendant, Hicks, * * * placed the plank in question on the ground and fastened it. * * *"

This shows that the Oklahoma Supreme Court recognizes the rule laid down in the case cited above, and recognizes the distinction made in *Cheatham v. Hogan,* 50 Wash. 465, 97 Pac. 499, 22 L. R. A. (N. S.) 951. This is the same distinction laid down by Judge Lurton in *Chalmers v. American Tin Plate Company,* 129 Fed. 562, 64 C. C. A. 129.

The next case referred to is *Henry v. Kaw Boiler Works, supra,* and in the second division of this case the distinction is also pointed out by Judge Mason, of the Kansas Supreme Court:

"It is said that the situation so presented creates an exception to the rule that a nondelegable duty rests upon the employer to use due care to furnish his employees a safe place to work in, or that the rule does not apply because the employees made their own working place. Whatever other conditions may create an exception to the general rule, or prevent its application, we think in the present case the defendant was liable for any negligence of the foreman, for these reasons: Assuming the facts to be as testified by the plaintiff, he had  *  *  *  nothing whatever to do with the construction of the gin pole, and he had no such knowledge or experience as to enable him to judge of the safety of that appliance."

Now, mark the following very pertinent language in this connection:

"He was under the orders of the foreman who employed him, and who was in entire charge of the construction of the tank. The plaintiff had a right to rely upon reasonable precautions being taken by the foreman to insure his safety, and the foreman was charged with the duty of taking such precautions."

This case clearly shows that the Kansas court realized that when the defendant supervised the erection of the structure and did not leave its erection to the servants, the exception did not apply.

In *Tomaselli v. Griffiths, supra,* Judge Hatch did not have occasion to refer to the distinction, but the record in that case shows:

"The shipping clerk, having the matter in charge, directed and assisted about providing a temporary hoisting apparatus for raising the box in the elevator shaft."

In this case the servants were not left to construct their place to work according to their own ideas, and this case is clearly within the distinction made by the cases cited above.

In Bailey, Personal Injuries (2d Ed.), the same rule laid down by Labatt is discussed at length. In section 197 a structure of this kind is treated, not as a place to work, but as an appliance. In section 198 the rule is laid down that the duty is performed by furnishing suitable material and competent workmen. In section 199 the rule is amplified, and in section 200 the distinction to which we have referred is made. The statement is quite clear:

"The rule was stated to be that where the employee in authority, representing the master, undertakes to plan a scaffold and to superintend its construction by ordinary unskilled laborers, such person thinks for the master, and the servant who uses it does not take the risks of defects or design. If, however, the master delivers to such laborers materials well suited to that purpose leaving it to their discretion to devise the plan of so simple a contrivance as they proceed with the work, a servant injured in its use cannot recover from the master, and this is true whether the defect was of plan or construction. In either case the injury would be imputable to the negligence of fellow servants."

In section 201 it is said:

"Or if he personally supervises and directs its construction, or fails to provide suitable material for its construction by his workmen, for themselves, or if he negligently hire incompetent men to construct it, then he may become liable for defects therein."

Immediately following this quotation we find the same rule as that stated in Labatt and as that stated in the former authorities.

An analysis of these cases cited by defendant in error shows that not a single one of them controverts the logical and reasonable rule adhered to in this opinion.

This brings us to the proposition, Should the court have sustained the defendant's demurrer to plaintiff's evidence? Having rejected the theory of the case as presented by plaintiff and as submitted to the jury, it follows that this question must be given an affirmative answer.

Under a constitutional provision requiring it, contributory negligence is a question which the court must never decide, but it must be submitted to the jury for their determination, but contributory negligence on the part of the plaintiff presupposes negligence on the part of the defendant. Before the question of contributory negligence on the part of the plaintiff can arise, negligence of the defendant must first be shown. If there is no negligence upon the part of the defendant shown, and the negligence of the plaintiff only, or of his fellow servant, caused the injury, then it is primary, not contributory, negligence on his part and there can be no case to go to the jury where a state of facts is presented, as in the case at bar, where the primary negligence was caused by the plaintiff or his fellow servant. *St. Louis & S. F. R. Co. v. Long,* 41 Okla. 177, 137 Pac. 1156.

Our Constitution relative to submitting the question of contributory negligence to the jury does not mean that if plaintiff's negligence or that of his fellow servants caused the injury, no negligence appearing upon the part of the defendant, a jury should pass upon the question. The very word "contributory" suggests that there is some negligence of the first party to add to or to assist. There must be a double negligence, a mutual negligence, before "contributory" negligence can enter into the case. In the case at bar the evidence shows conclusively that Smiley was the fellow servant of the plaintiff, which is admitted, at the time he nailed the crosspiece over the tubing board

and left a protruding end, which was the proximate cause of the injury to plaintiff. They nailed the crosspiece down, each in the presence of the other, and it was the primary negligence incurred at that time which occasioned the accident, no negligence upon the part of the defendant occurring then or at any other time that had any connection with the accident which occasioned the injuries to the plaintiff. So far as the allegation in the petition goes, so far as the evidence in the case shows, the defendant has been guilty of no negligence, either primary or contributory, and for that reason the court should have sustained the demurrer of defendant to plaintiff's evidence.

It follows that under the views herein expressed plaintiff below failed in the proof to establish any liability against the defendant, and under the facts as they appear, plaintiff will be unable to do so should a new trial be ordered, and, it appearing that a new trial would be useless, the case will be reversed and remanded, with directions to the trial court to enter a judgment sustaining the demurrer of defendant to plaintiff's evidence.

By the Court: It is so ordered.